# EXHIBIT "1"

May 31, 2022

Complaint and Jury Demand

EXHIBIT "1"

Electronically Filed
5/31/2022 9:26 PM
Steven D. Grierson
CLERK OF THE COURT

CASE NO: A-22-853365-C
Department 1

J. Randall Jones, Esq. (Bar #1927)
r.jones@kempjones.com
Madison S. Florance, Esq. (Bar #14229)
m.florance@kempjones.com
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000
Fax: (702) 385-6001

Brian S. Kabateck (*Pro Hac Vice Pending*)
bsk@bklawyers.com
Shant Karnikian (*Pro Hac Vice Pending*)
sk@bklawyers.com
Gary Partamian (*Pro Hac Vice Pending*)
gp@bklawyers.com
KABATECK, LLP
633 West Fifth Street, Suite 3200
Los Angeles, California 90071
Telephone: (213) 217-5027
Fax: (213) 217-5010

*Attorneys for Plaintiff*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| NEVADA RESTAURANT SERVICES, INC., DBA DOTTY'S, a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FACTORY MUTUAL INSURANCE COMPANY, dba FM GLOBAL, a Rhode Island corporation; AFFILIATED FM INSURANCE COMPANY; a Rhode Island Corporation; JEFFEREY ZEBARTH, an individual; PATRICK LANGIN, an individual; DOES I through X; and ROE Business Entities I through X,<br><br>Defendants. | Case No.:<br><br>Dept. No.:<br><br>**COMPLAINT AND JURY DEMAND**<br><br>ARBITRATION EXEMPTION CLAIMED (Damages Exceed $50,000.00) |

COMES NOW Plaintiff NEVADA RESTAURANT SERVICES, INC., DBA DOTTY'S ("Plaintiff"), by and through its undersigned counsel, the law firms of Kabateck LLP and Kemp

Jones, LLP, for its complaint against the named Defendants herein, alleges based on information and belief as follows:

**I.**

**THE PARTIES**

1. Plaintiff. At all relevant times herein, Plaintiff NEVADA RESTAURANT SERVICES, INC. is a Nevada Corporation, duly licensed to do business under the laws of the State of Nevada with its principal place of business in Clark County, Nevada.

2. Named Defendants.

a. At all relevant times, Defendant FACTORY MUTUAL INSURANCE COMPANY, dba FM GLOBAL ("FM"), was and is a Rhode Island corporation, with its principal place of business located at 270 Central Avenue, Johnston, RI 2919-4949. Defendant AFM (discussed below) and Defendant FM jointly issued insurance policies to Plaintiff and/or failed to properly handle one or more insurance claims made by Plaintiff. Defendant FM has been and is transacting the business of insurance in the State of Nevada and in Clark County (Nevada Department of Insurance License #15).

b. At all relevant times, Defendant AFFILIATED FM INSURANCE COMPANY ("AFM"), was and is a Rhode Island corporation, with its principal place of business located at 270 Central Avenue, Johnston, RI 2919-4949. Defendant FM and Defendant AFM jointly issued insurance policies to Plaintiff and/or failed to properly handle one or more insurance claims made by Plaintiff. Defendant AFM has been and is transacting the business of insurance in the State of Nevada and in Clark County (Nevada Department of Insurance License #9.)

c. Defendants AFM and FM are hereinafter referred to collectively as "Insurer-Defendants."

d. At all relevant times, Defendant JEFFEREY ZEBARTH ("ZEBARTH"), is, and/or was, an individual residing in the state of Nevada, in Clark County.

e. At all relevant times, Defendant PATRICK LANGIN ("LANGIN"), is, and/or was, an individual residing in the state of Nevada, in Clark County.

/ / /

3. Doe-Defendants. At all relevant times mentioned herein, the true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 50, inclusive ("Doe-Defendants"), are currently unknown to Plaintiff, who therefore brings suit against these Defendants by their fictitious names and capacities. Plaintiff is informed and believes and thereupon allege that each fictitiously named Defendant, whether acting for itself or as an agent, employee, corporation, association, or otherwise, is liable or responsible to Plaintiff and proximately caused injuries and damages to Plaintiff as alleged herein. While at this time Plaintiff is unaware of the true names and capacities of these Doe-Defendants, Plaintiff will amend its Complaint to state the true names and capacities of DOES 1 through 50, inclusive, when those identities have been ascertained.

4. Defendants. The Insurer-Defendants, Insurer-Defendants' Agents, and Doe Defendants, hereinafter, are collectively and individually referred to as "Defendant(s)", "Defendants", and "Defendant."

5. *Respondeat* Superior/Vicarious Liability. At all relevant times mentioned herein, Defendants were the agents, principals, employees, employers, servants, masters, partners, parents, subsidiaries, successors, predecessors, and joint venturers of each other. In doing the things hereafter alleged, Defendants were acting within the course and scope of such agency, employment, partnership, joint venture, and/or other said legal relationship, and with the consent, authority, ratification, approval, and/or permission of each of the other.

6. Aiding & Abetting. At all relevant times, each Defendant aided and abetted each other Defendant. Each Defendant knowingly gave substantial assistance to each other Defendant who performed the wrongful conduct alleged herein. Accordingly, each Defendant is jointly and severally liable for the damages proximately caused by each other Defendant's wrongful conduct.

7. Conspiracy. At all relevant times, each Defendant was the co-conspirator of each other Defendant, and, therefore, each Defendant is jointly and severally liable for the damages sustained as a proximate result of each other Defendant. Each Defendant entered into an express or implied agreement with each of the other Defendant to commit the wrongs herein alleged.

/ / /

/ / /

8. Pleading in the Alternative. All allegations in this Complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Whenever allegations in this Complaint are contrary or inconsistent, such allegations shall be deemed alternative.

**II.**

**JURISDICTION & VENUE**

9. This Court has personal jurisdiction over the Defendants and these claims pursuant to NRS 14.065 on the grounds that such jurisdiction is not inconsistent with the Nevada Constitution or United State Constitution.

10. This Court has personal jurisdiction over Defendants because Defendants ZEBARTH and LANGIN are or were residents of Clark County, Nevada, at all times relevant hereto, and Insurer-Defendants are authorized to, and, upon information and belief, do business in Nevada, procuring and issuing insurance policies in accordance with Nevada laws.

11. Venue is proper in this Court because Plaintiff's principle place of business is in Nevada, the incidents giving rise to this lawsuit occurred in Clark County, Nevada, and the insurance policy was procured in accordance with Nevada laws.

**III.**

**GENERAL ALLEGATIONS**

12. Insurance Contract. Defendants FM and AFM issued a commercial property insurance policy, Policy No. SHO82 ("the Policy"), to Plaintiff. The policy is attached hereto as **Exhibit "A"**. The Policy insures Plaintiff against the risk of losses described herein in connection with the loss at Plaintiff's property located at 2700 South Casino Drive, Laughlin, NV ("The Property" or "Plaintiff's Property").

a. The Policy was in effect from August 8, 2018, to August 8, 2019.

b. The Policy is an "all risk" policy which covers all risk of physical loss or damage to Plaintiff's Property located at 2700 South Casino Drive, Laughlin, NV. Plaintiff's Property at the aforementioned location operates as the Laughlin River Lodge Hotel & Casino.

/ / /

13. Covered Loss. On or about August 11, 2018, while the Policy was in full force and effect, Plaintiff's Property was severely damaged as a result of a windstorm. The Loss or Claim is covered under the Policy.

14. Claims Submission. Following the Loss, on or about August 11, 2018, Plaintiff filed a Claim with Defendants FM and AFM for the damage to the Property arising out of the Loss. Defendant AFM assigned Claim ID: 482141 to the Loss. Plaintiff provided Insurer-Defendants with all reasonably and readily available information and comments reasonably necessary for, and requested by, Insurer-Defendants to evaluate the Claim and disburse prompt payment owed to Plaintiff.

15. Bad Faith Claims Handling. A special relationship between Plaintiff and Insurer-Defendants was created and existed at all times relevant herein by reason of the Insurance Contract, and Insurer-Defendants owed a duty of upmost good faith and fair dealing in all respects in connection with their evaluation, investigation and claims handling with respect to the Plaintiff's Loss and/or Claim. This special relationship created a fiduciary or quasi-fiduciary duty on the Insurer-Defendants to fairly, promptly and adequately investigate the Loss and promptly pay the Claim pursuant to the Policy. Insurer-Defendants, in tortious and contractual breach of their duty of good faith and fair dealing, denied coverage, and/or paid for only some or part of the Loss, and/or have delayed payment of Claim, unreasonably and/or without proper cause, in breach of the terms of the Policy and the implied covenant of good faith and fair dealing, and in violation of Nevada common law and one or more statutory provisions under the Nevada Administrative Code, for example. *See*, *e.g.*, N.A.C. § 686A.660, §686A.665, §686A.670 and §686A.675. This includes, but is not necessarily limited to:

a. Unpaid and/or Untimely Paid Claim. To date, the Insurer-Defendants have failed to pay all benefits for Plaintiff's Loss resulting from the windstorm.

b. Inadequate Investigations. Insurer-Defendants have performed an inadequate investigation and/or unreasonably relied upon the inadequate investigation, opinions, and/or information of others, in delaying and/or failing to pay the Claim. Insurer-Defendants knew or should have known that the investigations, opinions and/or information of others, upon which they relied, were inadequate.

/ / /

c. Unqualified. Insurer-Defendants have relied upon the opinions of individuals who lack the expertise, training, or qualifications to render those opinions in their delay and/or failure to pay the Claim. Insurer-Defendants knew or should have known that these individuals lack the requisite qualifications to render those opinions.

16. Defendant ZEBARTH and LANGIN were tasked with investigating Plaintiff's Loss under the Policy and make findings about Plaintiff's Claim. Defendants ZEBARTH and LANGIN knew, or should have known, that their findings would have a direct effect on whether (and how much) Plaintiff would recover benefits under the Policy.

17. Punitive Damages. As detailed above, Insurer-Defendants had, at all times relevant hereto, a special relationship with Plaintiff arising from the Policy, and have acted with malice, oppression and fraud in tortious breach of their duty of good faith and fair dealing under Nevada law. Insurer-Defendants intended to cause Plaintiff harm and/or engaged in despicable conduct with a willful and conscious disregard for the rights of Plaintiff. Insurer-Defendants engaged in despicable conduct that subjected others, including Plaintiff, to cruel and unjust hardship in conscious disregard of their rights. Insurer-Defendants acted with deceit, intentionally misrepresented, and/or concealed a material fact known to Insurer-Defendants, with the intent to deprive others, including Plaintiff, of their legal rights and/or otherwise cause them harm.

## IV.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

**(As to Insurer-Defendants)**

18. Incorporation by Reference. Plaintiff hereby re-alleges and incorporates the preceding paragraphs as though set forth in full herein.

19. Contract. Plaintiff and Insurer-Defendants entered into a valid insurance contract, the Policy/Declarations attached hereto as **Exhibit "A"**, which was in effect at the time of the windstorm. Plaintiff and Insurer-Defendants agreed to be bound by the Policy's terms.

/ / /

/ / /

20. Performance/Excuse. Plaintiff performed all, or substantially all, of the relevant material conditions of the contract, except to the extent that Plaintiff was excused from having to perform those conditions as a result of, among other things, Insurer-Defendants' bad faith conduct in breach of the contract. Insurer-Defendants received all due and owing premiums under the terms of the Policy. Plaintiff gave Insurer-Defendants access to all relevant information and materials that they requested in order to evaluate the claims Plaintiff submitted for losses suffered as a result of the windstorm.

21. Breach. Insurer-Defendants breached the terms of the contract by failing to pay, underpaying, and/or delaying payment of monies owed for the claims Plaintiff submitted as a result of the windstorm. In addition, Insurer-Defendants breached the terms of the contract by failing to conduct a full, fair, and thorough investigation of the loss and claim, and/or hiring consultants that were unlicensed and/or biased.

22. Resultant Damages. Insurer-Defendants' breach is a substantial factor in causing Plaintiff's harm, including, but not limited to, the difference between the amount Plaintiff claims for losses and the amount the Insurer-Defendants paid (if any) for those claims, plus interest.

23. As a direct and proximate result of Insurer-Defendants' breach, Plaintiff has been damaged, and will continue to sustain damages, in excess of FIFTEEN THOUSAND DOLLARS ($15,000).

24. As a direct and proximate result of Insurer-Defendants' breach, Plaintiff has been required to retain the services of an attorney to commence this action and is entitled to attorney's fees and costs.

/ / /

/ / /

/ / /

**V.**

**SECOND CAUSE OF ACTION**

**CONTRACTUAL BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(CONTRACTUAL BAD FAITH INSURANCE)**

**(As to Insurer-Defendants)**

25. Incorporation by Reference. Plaintiff hereby re-alleges and incorporates the preceding paragraphs as though set forth in full herein.

26. Contract. Plaintiff and Insurer-Defendants entered into a valid insurance contract, the Policy/Declarations attached hereto as **Exhibit "A"**, which was in effect at the time of the windstorm. Plaintiff and Insurer-Defendants agreed to be bound by the Policy's terms.

27. Implied Covenant. Implied in every contract in Nevada is a covenant of good faith and fair dealing. Accordingly, the Policy contained an implied covenant of good faith and fair dealing under which the Insurer-Defendants agreed to perform their contractual obligations in good faith, to deal fairly with Plaintiff, and to refrain from unreasonably depriving Plaintiff of benefits due under the Policy.

28. Performance/Excuse. Plaintiff performed all, or substantially all, of the relevant material conditions of the contract, except to the extent that Plaintiff was excused from having to perform those conditions as a result of, among other things, Insurer-Defendants' bad faith conduct in breach of the contract. Insurer-Defendants received all due and owing premiums under the terms of the Policy. Plaintiff gave Insurer-Defendants access to all relevant information and materials that they requested in order to evaluate the claims Plaintiff submitted for losses suffered as a result of the windstorm.

29. Breach of Good Faith and Fair Dealing Duty. Insurer-Defendants contractually breached the implied covenant of good faith and fair dealing when they unreasonably denied or withheld benefits, unreasonably delayed payment, and/or unreasonably devalued losses to partially deny benefits due to Plaintiff. Despite Plaintiff's repeated demands for payment and employment of representatives, counsel, and/or consultants to represent them and facilitate the claims process, Insurer-Defendants

have refused, repeatedly, to issue payments due and have continued to engage in ongoing and unlawful insurance practices to further their economic interests and violate Plaintiff's rights. This conduct includes, but is not limited to, the conduct alleged in the Complaint and as follows:

a. Unreasonably and unjustifiably failing to pay the Claim;

b. Hiring unqualified, unlicensed, and/or biased consultants and/or adjusters to evaluate the Losses and damages;

c. Failing to perform fair, full, competent and/or complete claims investigation, including but not limited to estimating of the Loss;

d. Deliberately, unjustifiably, and unreasonably failing to adopt and/or implement reasonable standards for the prompt processing of Plaintiff's claims, knowing that the delay would prevent or impede on Plaintiff's pursuit of full policy benefits due and would frustrate, pressure, and persuade Plaintiff into dropping or minimizing their claims;

e. Deliberately, unjustifiably, and unreasonably failing to attempt in good faith to reach a prompt, fair, and equitable settlement of Plaintiff's Claim in order to discourage Plaintiff from pursuing full policy benefits;

f. Not attempting in good faith to effectuate prompt, fair, and equitable settlement of Plaintiff's Claim when the amount of the Loss has been reasonably clear;

g. Refusing to pay any or adequate insurance benefits which a reasonable person would have believed Plaintiff was entitled to receive;

h. Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial and/or rejection of Plaintiff's Claim;

i. Deliberately, unreasonably, and unjustifiably failing to timely and fully pay Plaintiff's Claim;

j. Failing to thoroughly and objectively investigate Plaintiff's Claim;

k. Compelling Plaintiff to incur legal expenses to obtain insurance benefits which Insurer-Defendants have known, or reasonably should have known, were owed to Plaintiff;

l. Failing to comply with N.A.C. § 686A.660, §686A.665, §686A.670 and §686A.675; and

m. Other acts or omissions of which Plaintiff is presently unaware and which will be shown

according to proof at the time of trial.

30. Resultant Damages. Insurer-Defendants' breach is a substantial factor in causing Plaintiff's harm, including, but not limited to, the difference between the amount Plaintiff claims for the Loss and the amount the Insurer-Defendants paid (if any) for those Claims, plus interest.

31. As a direct and proximate result of Insurer-Defendants' breach, Plaintiff has been damaged, and will continue to sustain damages, in excess of FIFTEEN THOUSAND DOLLARS ($15,000).

32. As a direct and proximate result of Insurer-Defendants' breach, Plaintiff has been required to retain the services of an attorney to commence this action and is entitled to attorney's fees and costs.

33. Punitive Damages. As detailed above, Defendants have acted with malice, oppression and fraud. Defendants intended to cause Plaintiff's harm and/or engaged in despicable conduct with a willful and conscious disregard for the rights of Plaintiff. Defendants engaged in despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of their rights. Defendants acted with deceit, intentionally misrepresented, and/or concealed a material fact known to Defendants, with the intent to deprive Plaintiff of property, their legal rights, and/or otherwise cause them harm.

## VI.

## THIRD CAUSE OF ACTION

## TORTIOUS BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

## (TORTIOUS BAD FAITH INSURANCE)

**(As to Insurer-Defendants)**

34. Incorporation by Reference. Plaintiff hereby re-alleges and incorporates the preceding paragraphs as though set forth in full herein.

35. Contract. Plaintiff and Insurer-Defendants entered into a valid insurance contract, the Policy/Declarations attached hereto as **Exhibit "A"**, which was in effect at the time of the windstorm. Plaintiff and Insurer-Defendants agreed to be bound by the Policy's terms.

/ / /

36. Special Relationship. Under Nevada law a special relationship is created between an insurer and their insured when a contract of insurance is entered into between the parties creating a fiduciary or quasi-fiduciary relationship between the insurer and the insured. Under that special relationship an insured, like Plaintiff, places their trust in the insurer to deal fairly and in good faith at all times with respect to matters related to the insurance policy, specifically including the evaluation, investigation and claims handling in connection with any loss or claim made under the policy.

37. Implied Covenant. Implied in every contract in Nevada is a covenant of good faith and fair dealing. Accordingly, the Policy contained an implied covenant of good faith and fair dealing under which the Insurer-Defendants agreed to perform their contractual obligations in good faith, to deal fairly with Plaintiff, and to refrain from unreasonably depriving Plaintiff of benefits due under the Policy.

38. Performance/Excuse. Plaintiff performed all, or substantially all, of the relevant material conditions of the contract, except to the extent that Plaintiff was excused from having to perform those conditions as a result of, among other things, Insurer-Defendants' bad faith conduct in contractual and tortious breach of the contract. Insurer-Defendants received all due and owing premiums under the terms of the Policy. Plaintiff gave Insurer-Defendants access to all relevant information and materials that they requested in order to evaluate the claims Plaintiff submitted for losses suffered as a result of the windstorm.

39. Breach of Good Faith and Fair Dealing Duty. Insurer-Defendants tortuously breached the implied covenant of good faith and fair dealing when they unreasonably denied or withheld benefits, unreasonably delayed payment, and/or unreasonably devalued losses to partially deny benefits due to Plaintiff. Despite Plaintiff's repeated demands for payment and employment of representatives, counsel, and/or consultants to represent them and facilitate the claims process, Insurer-Defendants have refused, repeatedly, to issue payments due and have continued to engage in ongoing and unlawful insurance practices to further their economic interests and violate Plaintiff's rights. This conduct includes, but is not limited to, the conduct alleged in the Complaint and as follows:

a. Unreasonably and unjustifiably failing to pay the Claim;

b. Hiring unqualified, unlicensed, and/or biased consultants and/or adjusters to evaluate the Losses and damages;

c. Failing to perform full, fair, competent and/or complete claims investigation, including but not limited to estimating of the Loss;

d. Deliberately, unjustifiably, and unreasonably failing to adopt and/or implement reasonable standards for the prompt processing of Plaintiff's claims, knowing that the delay would prevent or impede on Plaintiff's pursuit of full policy benefits due and would frustrate, pressure, and persuade Plaintiff into dropping or minimizing their claims;

e. Deliberately, unjustifiably, and unreasonably failing to attempt in good faith to reach a prompt, fair, and equitable settlement of Plaintiff's Claim in order to discourage Plaintiff from pursuing full policy benefits;

f. Not attempting in good faith to effectuate prompt, fair, and equitable settlement of Plaintiff's Claim when the amount of the Loss has been reasonably clear;

g. Refusing to pay any or adequate insurance benefits which a reasonable person would have believed Plaintiff was entitled to receive;

h. Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial and/or rejection of Plaintiff's Claim;

i. Deliberately, unreasonably, and unjustifiably failing to timely and fully pay Plaintiff's Claim;

j. Failing to thoroughly and objectively investigate Plaintiff's Claim;

k. Compelling Plaintiff to incur legal expenses to obtain insurance benefits which Insurer-Defendants have known, or reasonably should have known, were owed to Plaintiff;

l. Failing to comply with N.A.C. § 686A.660, §686A.665, §686A.670 and §686A.675; and

m. Other acts or omissions of which Plaintiff is presently unaware and which will be shown according to proof at the time of trial.

40. Resultant Damages. Insurer-Defendants' breach is a substantial factor in causing Plaintiff's harm, including, but not limited to, the difference between the amount Plaintiff claims for the Loss and the amount the Insurer-Defendants paid (if any) for those Claim, plus interest.

41. As a direct and proximate result of Insurer-Defendants' breach, Plaintiff has been damaged, and will continue to sustain damages, in excess of FIFTEEN THOUSAND DOLLARS ($15,000).

42. As a direct and proximate result of Insurer-Defendants' breach, Plaintiff has been required to retain the services of an attorney to commence this action and is entitled to attorney's fees and costs.

43. Punitive Damages. As detailed above, Defendants have acted with malice, oppression and fraud. Defendants intended to cause Plaintiff's harm and/or engaged in despicable conduct with a willful and conscious disregard for the rights of Plaintiff. Defendants engaged in despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of their rights. Defendants acted with deceit, intentionally misrepresented, and/or concealed a material fact known to Defendants, with the intent to deprive Plaintiff of property, their legal rights, and/or otherwise cause them harm.

## VII.

## FOURTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

**(As to Defendants ZEBARTH and LANGIN)**

44. Incorporation by Reference. Plaintiff hereby re-alleges and incorporates the preceding paragraphs as though set forth in full herein.

45. Representation. While in the course and of their profession and/or employment, Defendants ZEBARTH and LANGIN represented the scope and extent of damage to Plaintiff's Property to both Plaintiff and the Insurer-Defendants.

46. Defendants ZEBARTH and LANGIN failed to exercise reasonable care or competence in obtaining or communicating the representation to Plaintiff and the Insurer-Defendants.

47. Defendants ZEBARTH's and LANGIN's representations of the scope and extent of damage to Plaintiff's Property were false. Defendants ZEBARTH and LANGIN had no reasonable grounds for believing their representations were true. And the representations were supplied for the purpose of guiding Plaintiff and the Insurer-Defendants in their business transaction (the adjustment of the claim).

48. Reliance. Defendants ZEBARTH and LANGIN intended for Plaintiff to rely on their misrepresentations and settle its property damage Claim for less than its full value. Plaintiff was ignorant about Defendants ZEBARTH's and LANGIN's misrepresentations, and did in fact rely on the misrepresentations.

49. Resultant Damages. Plaintiff was damaged by Defendants ZEBARTH's and LANGIN's misrepresentations because it resulted in bad faith conduct by Plaintiff's insurers, denied coverage, and/or underpayment of their Claim, and/or delay of payment of all claims, unreasonably and/or without proper cause by Insurer-Defendants. This undervaluation, underpayment, delay and failure to pay all monies owed for the Claim Plaintiff submitted for the covered Loss has forced Plaintiff to expend additional time and resources to institute the pending action, as a result of Defendants ZEBARTH's and LANGIN's misrepresentations.

50. As a direct and proximate result of Defendants ZEBARTH's and LANGIN's misrepresentation, Plaintiff has sustained damages, and will continue to sustain damages, in excess of FIFTEEN THOUSAND DOLLARS ($15,000).

51. As a direct and proximate result of Defendants ZEBARTH's and LANGIN's misrepresentations, Plaintiff has been required to retain the services of an attorney to commence this action and is entitled to attorney's fees and costs.

## VIII.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment to be entered against Defendants, and each of them, and for all damages to which Plaintiff may be entitled, including but not limited to, the following:

1. General damages in excess of $15,000;
2. Special damages in excess of $15,000;
3. Punitive damages to be determined at trial;
4. Reasonable attorney's fees and costs of suit;
5. Pre-judgment and post-judgment interest, as allowed by law;
6. Statutory penalties; and

7. Such other and further legal and equitable relief as the Court deems just and proper.

DATED this 31st day of May, 2022.

**KEMP JONES, LLP**

_*/s/ Randall Jones*_______________________
J. Randall Jones, Esq. (Bar # 1927)
Madison S. Florance, Esq. (Bar # 14229)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

and

**KABATECK, LLP**

Brian S. Kabateck (*Pro Hac Vice Pending*)
Shant Karnikian (*Pro Hac Vice Pending*)
Gary Partamian (*Pro Hac Vice Pending*)
633 West Fifth Street, Suite 3200
Los Angeles, California 90071

*Attorneys for Plaintiff*

**DEMAND FOR JURY TRIAL**

Plaintiff NEVADA RESTAURANT SERVICES, INC., DBA DOTTY'S, by and through its attorneys of record, hereby demand a jury trial of all issues in the above matter.

DATED this 31st day of May, 2022.

**KEMP JONES, LLP**

*/s/ Randall Jones*

J. Randall Jones, Esq. (Bar # 1927)
Madison S. Florance, Esq. (Bar # 14229)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

and

**KABATECK, LLP**

Brian S. Kabateck (*Pro Hac Vice Pending*)
Shant Karnikian (*Pro Hac Vice Pending*)
Gary Partamian (*Pro Hac Vice Pending*)
633 West Fifth Street, Suite 3200
Los Angeles, California 90071

*Attorneys for Plaintiff*

# Exhibit A

Member of the FM Global Group

270 Central Ave
Johnston, RI 02919
www.affiliatedfm.com

Thank you for placing your property insurance with AFM. We believe insurance should be straightforward and certain. That is why our proVision® 4100 policy is easy to read and navigate, while providing you broad coverage.

In addition to providing property insurance, AFM would like to help you protect your business and achieve your goals. In partnering with AFM, you have the strength of FM Global Group behind you, including a strong balance sheet and access to our market-leading loss prevention engineering products and services that are based on more than 180 years of experience as a property specialist. We are eager to work with you and your broker to choose how to best identify, prioritize and reduce future loss in a way that makes practical and affordable sense.

Our engineering services, combined with the comprehensive coverage of our proVision 4100, will give you peace of mind and allow you to focus on what matters most—making your business thrive. We are committed to maintaining a long-term, mutually beneficial relationship with you. And, it is our hope that you will take advantage of the many tools and resources we offer our clients, such as online training, onsite policy workshops and access to AFM Online, our powerful extranet that includes policy documents and data-driven risk management tools.

If you have any questions or concerns, please do not hesitate to contact your local account team.

Respectfully,

James R. Galloway
Senior Vice President, AFM

# Loss Reporting and Contact Information
## San Francisco Operations

Member of the FM Global Group

---

**Claims Manager:**

Richard (Rick) A. Sunny
Affiliated FM Insurance Company
1333 North California Boulevard, Suite 200
Walnut Creek, CA 94596
Tel: 925-287-4300
richard.sunny@fmglobal.com

**Property Loss Reporting Procedure:**

To ensure that you receive prompt claims service, be sure to report a loss immediately. This enables us to provide you a professional property adjuster to examine your loss. Your loss may give rise to a claim under your Affiliated FM Insurance Company policy.

**Notice of Loss:**

The notice and report of any loss under an Affiliated FM Insurance Company policy should be communicated by calling the 24-hour claims hotline: **1-877-NEW-LOSS (1) 877 639 5677**

If this first notice and report is made orally, it should be confirmed in writing including at least the same information as was provided in the oral first notice and report.

**Leaving a Message:**

When leaving a message, please include the following information:

- Name and phone number of person to contact
- A brief description of the loss

A claims adjuster will return your call promptly.

---

**Account Engineer:**

**David Geng**
Affiliated FM Insurance Company
1333 North California Boulevard, Suite 200
Walnut Creek, CA 94596
Tel: 925-287-4203
david.geng@affiliatedfm.com

**Jurisdictional Services:**

Call to inquire about or make arrangements for North American jurisdictional services
**1-800-926-9345**

proVision AFM

Affiliated FM Insurance Company
P.O Box 7500
Johnston, RI 02919

**DECLARATIONS PAGE**

| **Policy No.** | **Previous Policy No.** | **DATE OF ISSUE** |
|---|---|---|
| SH082 | SG748 | 17-Aug-2018 |
| **Account No.** | | |
| 1-74989 | | |

In consideration of this Policy's Provisions, Conditions, Stipulations, Exclusions and Limits of Liability, and the premium charged, Affiliated FM Insurance Company, hereinafter referred to as the "Company", does insure:

**INSURED:**

Nevada Restaurant Services, Inc.
PO Box 93835
Las Vegas, NV 89193

(For Complete Title See Policy)

The term of this Policy is from the **8th day of August 2018 to the 8th day of August 2019 at 12:01a.m.**, Standard Time, at the Locations of property involved as provided in this Policy.

This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy.

This Policy is made and accepted subject to the above provisions and those hereinafter stated, which are made a part of this Policy, together with such other provisions and agreements as may be added to this Policy.

In Witness, this Company has issued this Policy at its office in Walnut Creek, California this 17th day of August 2018.

Authorized Signature
AS/gdm

Secretary

President

PRO DEC 4100 (04/15)
*© 2017 AFM. All rights reserved.*

# DECLARATIONS

## A. POLICY TERM:

08-August-2018 to 08-August-2019

## B. NAMED INSURED:

Nevada Restaurant Services, Inc., and its wholly or majority owned subsidiaries and any interest which may now exist or hereinafter be created or acquired which are owned, controlled or operated by any one or more of those named insureds.

## C. POLICY LIMIT:

This Company's total limit of liability, including any insured Business Interruption loss, will not exceed the Policy Limit of $400,000,000 as a result of any one **occurrence** subject to the respective sub-limits of liability shown elsewhere in this Policy.

## D. POLICY TERRITORY:

Coverage provided by this Policy is limited to property while located within: the fifty (50) United States; District of Columbia; Commonwealth of Puerto Rico; U.S. Virgin Islands; and Canada, except as follows:

**Cyber Coverage Territory - PRO 727 (1/17)**

Coverage provided in Data, Programs or Software; Off-Premises Data Services Property Damage and Business Interruption and Computer Systems Non-Physical Damage is limited to anywhere in the world except Cuba, Iran, North Korea, Sudan, Syria or Crimea Region of Ukraine.

**Supply Chain Coverage Territory - PRO 322 (1/17)**

Coverage provided in BUSINESS INTERRUPTION COVERAGE EXTENSIONS, Supply Chain, is limited to property anywhere in the world except in the following countries, provinces or jurisdictions:

Afghanistan; Albania; Algeria; Angola; Armenia; Azerbaijan; Bangladesh; Belarus; Belize; Benin; Bhutan; Botswana; Burkina Faso; Burundi; Cambodia; Cameroon; Central African Republic; Chad; Cote D'Ivoire; Cuba; Democratic Republic of the Congo; Djibouti; Egypt; Equatorial Guinea; Eritrea; Ethiopia; Fiji; Gabon; Gambia; Georgia; Ghana; Grenada; Guinea; Guinea-Bissau; Guyana; Haiti; Honduras; Jammu and Kashmir in India; Iran; Iraq; Israel; Gaza Strip, West Bank and territories north of Latitude 32.80 N in Israel; Kenya; Laos; Lebanon; Lesotho; Liberia; Libya; Madagascar; Malawi; Mali; Mauritania; Mauritius; Moldova; Mongolia; Montenegro; Montserrat; Mozambique; Myanmar; Namibia; Nepal; Niger; Nigeria; North Korea; Pakistan; Papua New Guinea; Aksai Chin and Trans-Karakoram Tract in People's Republic of China; Republic of the Congo; Chechen Republic of the Russian Federation; Rwanda; Senegal; Seychelles; Sierra Leone; Somalia; Sri Lanka; South Sudan; Sudan; Swaziland; Syria; Tajikistan; Tanzania; Timor-Leste; Togo; Agri, Batman, Bingol, Bitlis, Diyarbakir, Elazig, Hakkari, Igdir, Mardin, Mus, Sanliurfa, Siirt, Sirnak and Van in Turkey; Turkmenistan; Uganda; Ukraine; Crimea Region of Ukraine; Uzbekistan; Venezuela; Yemen; Zambia; and Zimbabwe.

## E. INSURANCE PROVIDED:

This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as follows:

See Attached Location Schedule.


***© 2017 AFM. All rights reserved.***

# DECLARATIONS

## F. SUB-LIMITS:

Unless otherwise stated below or elsewhere in this Policy, the following sub-limits of liability, including any insured Business Interruption loss, will be the maximum payable and will apply on a per **occurrence** basis.

The sub-limits stated below or elsewhere in this Policy are part of and not in addition to the Policy Limit.

When a limit of liability applies to a **location** or property, such limit of liability will be the maximum amount payable for all loss or damage.

There shall be no liability under this Policy when "NOT COVERED" is shown as a sublimit.

1. $15,000,000 Earth Movement **annual aggregate** for all coverages provided, and is the maximum amount payable for all loss or damage caused by or resulting from Earth Movement, not to exceed:

$5,000,000 Earth Movement **annual aggregate** for all coverages provided at the following **location**(s):

1. Dotty's #1, 1131 East Tropicana Avenue, Las Vegas, NV, 89119
2. Dotty's #3, 9018 West Sahara Avenue, Las Vegas, NV, 89117-5744
3. Dotty's #4, 1854 East Charleston Boulevard, Las Vegas, NV, 89104
4. Dotty's #5, 2823 North Green Valley Parkway, Henderson, NV, 89014
5. Dotty's #6, 4350 Las Vegas Boulevard, Las Vegas, NV, 89115-0513
6. Dotty's #7, 2101 South Decatur Boulevard, Las Vegas, NV, 89102
7. Dotty's #8, 1133 North Boulder Highway, Henderson, NV, 89011
8. Dotty's #9, 2300 South Maryland Parkway, Las Vegas, NV, 89104
13. Dotty's #14, 7950 West Tropical Parkway Ste 110, Las Vegas, NV, 89149
14. Dotty's #15, 2839 West Sahara Avenue, Las Vegas, NV, 89102
15. Dotty's #16, 2929 East Desert Inn Road Ste 32-35, Las Vegas, NV, 89121-3604
16. Dotty's #17, 2111 West Williams Avenue, Fallon, NV, 89406
17. Dotty's #18, 4821 Spring Mountain Road Ste L, Las Vegas, NV, 89102
18. Dotty's #19, 560 Marks Street Ste F, Henderson, NV, 89014
20. Dotty's #21, 250 South Highway 160 Ste B1, Pahrump, NV, 89048
21. Dotty's #22, 1350 East Flamingo Road, Las Vegas, NV, 89119
24. Dotty's #25, 4801 South Eastern Avenue, Las Vegas, NV, 89119
27. Dotty's #28, 5191 West Charleston Boulevard, Las Vegas, NV, 89146
28. Dotty's #29, 9605 West Tropicana Avenue, Las Vegas, NV, 89147
29. Dotty's #30, 9031 West Flamingo Road, Las Vegas, NV, 89147
30. Dotty's #31, 110 East Bruner Avenue Ste 100, Las Vegas, NV, 89183-5700
31. Dotty's #32, 1520 North Eastern Avenue Ste 113, Las Vegas, NV, 89101
32. Dotty's #33, 1330 South Highway 160 # 32, Pahrump, NV, 89048
33. Dotty's #34, 4437 West Charleston Boulevard, Las Vegas, NV, 89102
34. Dotty's #35, 1744 Mountain City Highway Ste 102, Elko, NV, 89801
35. Dotty's #36, 6060 West Windmill Lane, Las Vegas, NV, 89139
36. Dotty's #37, 2525 Mountain City Highway Ste 101, Elko, NV, 89801
37. Dotty's #38, 8625 South Rainbow Boulevard, Las Vegas, NV, 89139
38. Dotty's #39, 7950 South Rainbow Boulevard, Las Vegas, NV, 89139
39. Dotty's #40, 9185 South Jones Boulevard, Las Vegas, NV, 89139
41. Dotty's #42, 10925 South Maryland Parkway, Las Vegas, NV, 89052
43. Dotty's #44, 9755 West Russell Road, Las Vegas, NV, 89148-5533
45. Dotty's #46, 2501 East Lake Mead Boulevard, North Las Vegas, NV, 89030
47. Dotty's #48, 2075 Palm Street, Las Vegas, NV, 89104
48. Dotty's #49, 6910 East Lake Mead Boulevard, Las Vegas, NV, 89156
49. Dotty's #50, 4730 Blue Diamond Road, Las Vegas, NV, 89139
50. Dotty's #51, 2877 East Charleston Boulevard Ste B, Las Vegas, NV, 89104-6692
51. Dotty's #52, 6142 West Flamingo Road, Las Vegas, NV, 89103
52. Dotty's #53, 1366 West Cheyenne Ste 112 & 113, North Las Vegas, NV, 89030-7837


***© 2017 AFM. All rights reserved.***

# DECLARATIONS

SECTION F, **SUB-LIMITS**, continued:

53. Dotty's #54, 5990 Losee Road Ste 111,112 & 113, North Las Vegas, NV, 89081-6204
55. Dotty's #56, 840 North Decatur Boulevard, Las Vegas, NV, 89107-1905
56. Dotty's #57, 3685 South Rainbow Boulevard Ste 100, Las Vegas, NV, 89103
58. Dotty's #59, 3870 East Flamingo Road Ste A-9, Las Vegas, NV, 89121
59. Dotty's #60, 1750 South Rainbow Boulevard, Las Vegas, NV, 89146-2948
60. Dotty's #61, 1060 West Pioneer Boulevard, Mesquite, NV, 89027-8892
61. Dotty's #62, 4213 Boulder Highway Building 1 Ste F-M, Las Vegas, NV, 89121
63. Dotty's #64, 4760 West Sahara Avenue Ste 1, Las Vegas, NV, 89102
64. Dotty's #65, 3405 Construction Way, Winnemucca, NV, 89445-3668
66. Dotty's #67, 2795 West Mead Lane Boulevard Lot 1-1-2, Las Vegas, NV, 89101
67. Dotty's #68, 2090 East Serene Avenue, Las Vegas, NV, 89123
68. Dotty's #69, 865 North Lamb Boulevard Suites 6-9, Las Vegas, NV, 89110
69. Dotty's #70, 2089 North Jones Boulevard, Las Vegas, NV, 89108
71. Dotty's #72, 1631 North Rancho Drive, Las Vegas, NV, 89106
72. Dotty's #73, 310 South Decatur Boulevard, Las Vegas, NV, 89107
75. Dotty's #76, 754 South Boulder Highway, Henderson, NV, 89015
76. Dotty's #77, 1511 North Nellis Boulevard, Las Vegas, NV, 89110-5317
77. Dotty's #78, 3377 North Rancho Drive, Las Vegas, NV, 89130
78. Dotty's #79, 1440 Highway 95A North Ste 1, Fernley, NV, 89408
79. Dotty's #80, 4213 Boulder Highway Building 1 Ste A-E, Las Vegas, NV, 89121
80. Dotty's #81, 1987 North Nellis Boulevard Ste D12, Las Vegas, NV, 89115
82. Dotty's #83, 6000 West Charleston Boulevard, Las Vegas, NV, 89146
83. Dotty's #84, 8699 West Charleston Boulevard, Las Vegas, NV, 89117
84. Dotty's #85, 4790 West Ann Road, North Las Vegas, NV, 89031-3463
85. Dotty's #86, 3820 Blue Diamond Road, Las Vegas, NV, 89139
86. Dotty's #87, 9495 Las Vegas Boulevard South, Las Vegas, NV, 89123
88. Dotty's #89, 91 West Plumb Lane, Reno, NV, 89509
89. Dotty's #90, 5040 Boulder Highway # 100 & 105, Las Vegas, NV, 89122
90. Dotty's #91, 100 Trescartes Avenue, Spring Creek, NV, 89815
91. Dotty's #92, 7380 South Eastern Avenue, las Vegas, NV, 89123
92. Dotty's #93, 30 East Horizon Ridge Parkway, Henderson, NV, 89002
93. Office, 3645 & 3649 North Losee Road, 1412 East Gowan, North Las Vegas, NV, 89030
94. Dotty's #95, 10170 West Tropicana Avenue #141-143, Las Vegas, NV, 89147
95. Dotty's #96, 7310 Arroyo Crossing Parkway #110 & #120, Las Vegas, NV, 89113
96. Dotty's #97, 3175 East Tropicana Avenue Ste D, Las Vegas, NV, 89121
97. Dotty's #98, 5643 Centennial Center Boulevard #160&165, Las Vegas, NV, 89149
99. Dotty's #100, 420 North Nellis Boulevard Suite A12, Las Vegas, NV, 89110
100. Dotty's #101, 2940 South Durango Drive, Las Vegas, NV, 89117
101. Dotty's #102, 8545 West Warm Springs Road, Las Vegas, NV, 89113
102. Dotty's #103, 3610 South Highway 160 Suite 403, Pahrump, NV, 89048
105. Dotty's #106, 2397 Casey Road, #101-103, Fallon, NV, 89406
106. Dotty's #107, 3345 East Sahara Avenue, Las Vegas, NV, 89104
107. Dotty's #108, 1690 North Decatur Boulevard, Las Vegas, NV, 89108
108. Bourbon Street Sports Bar, 2750 East Craig Road, North Las Vegas, NV, 89030
109. Dotty's #110, 10000 West Sahara Avenue Suite 100, Las Vegas, NV, 89117
110. Dotty's #111, 2428 East Cheyenne Avenue, North Las Vegas, NV, 89030
111. Dottys #112, 2542 Las Vegas Boulevard North, North Las Vegas, NV, 89030
112. Dottys #113, 550 El Dorado Road, Mesquite, NV, 89027
113. Storage, 835 West Bonanza Road, Las Vegas, NV, 89106
114. Storage, 55 Timberline Drive, Bozeman, MT, 59718
115. Hangar, 4511 West Cheyenne Avenue #301/Hangar #3, North Las Vegas, NV, 89032
116. Hoover Dam Lodge - Hotel & Casino, 18000 East Highway 93 South, Boulder City, NV, 89005


***© 2017 AFM. All rights reserved.***

# DECLARATIONS

SECTION F, **SUB-LIMITS**, continued:

118. La Villita #3, 642 South Boulder Highway, Henderson, NV, 89015
119. Boulder Lodge Casino, 920 South Boulder Highway, Henderson, NV, 89015
120. Bourbon Street Sports Bar #137, 2696 West Ann Road, North Las Vegas, NV, 89031
121. Storage / Office / Warehouse, 951 West Main Street Suite G, Elko, NV, 89801
122. Dotty's #138, 4341 North Rancho Drive, Las Vegas, NV, 89130-3407
123. Red Dragon Sports Bar #116, 6168 Spring Mountain Road, Las Vegas, NV, 89146
124. Dotty's #141, 5570 Centennial Center Boulevard Suite 130-140, Las Vegas, NV, 89149
125. Dotty's #104, 4550 East Tropicana Avenue, Las Vegas, NV, 89121-6705
126. Bourbon Street Sports Bar #142, 775 West Craig Boulevard Suites 152-160, North Las Vegas, NV, 89032
127. Bourbon Street Sports Bar #144, 7287 West Azure Drive, Las Vegas, NV, 89130
128. Bourbon Street Sports Bar #146, 2210-2216 Paradise Road, Las Vegas, NV, 89104
129. Red Dragon Sports Bar #143, 4550, 4552 & 4560 Spring Mountain Road, Las Vegas, NV, 89146
130. Bourbon Street Sports Bar #147, 281 West Centennial Parkway #103, North Las Vegas, NV, 89084
131. Dotty's #148, Southwestern Corner of Farm Road and Durange Drive APN 12517601010, Las Vegas, NV, 89104
132. Bourbon Street Sports Bar #149, 6670 South Tenaya Way #100, Las Vegas, NV, 89113
133. Bourbon Street Sports Bar #150, 218 East Tropicana Avenue, Las Vegas, NV, 89169
134. Dotty's #151, 15 North Nellis Boulevard, Las Vegas, NV, 89110
135. Bourbon Street Sports Bar #152, 4405 West Flamingo Road, Las Vegas, NV, 89103
136. Bourbon Street Sports Bar #153, 721 Mall Ring Circle, Henderson, NV, 89104
137. Dotty's #154, 6221 North Decatur Boulevard, North Las Vegas, NV, 89084
138. Dotty's #156, 2401 West Bonanza Road, Suite A, B, & D, Las Vegas, NV, 89106
139. Bourbon Street Sports Bar #155, 6020 Badura Avenue, Las Vegas, NV, 89118
140. 4550 West Flamingo Suite 6-9, Las Vegas, NV, 89147
141. 1288 South Nellis Boulevard, Las Vegas, NV, 89104-5782
142. Bourbon Street Sports Bar #163, 2990 Saint Rose Parkway, Henderson, NV, 89052-4446
143. Bourbon Street Sports Bar #145, 2610 West Sahara Avenue, Las Vegas, NV, 89102
144. Dotty's #173, 9436 West Lake Mead Boulevard, Suites 1-5, Las Vegas, NV, 89134
145. Dotty's #139, 3220 North Jones Boulevard, Suites 1-5, Las Vegas, NV, 89108
146. La Villita #2, 821 North Lamb, #9, Las Vegas, NV, 89110
148. Bourbon Street Sports Bar #187, 3720 West Lake Mead Boulevard, North Las Vegas, NV, 89032
149. Dotty's #174, 4310 East Tropicana Avenue, Las Vegas, NV, 89121
150. Bourbon Street Sports Bar #175, 7777 West Sahara Avenue, Las Vegas, NV, 89117
152. Dotty's #177, 2200 West Horizon Ridge Parkway, Suite G, Henderson, NV, 89052
157. Dotty's #183, 2107 North 7th Avenue, Bozeman, MT, 59715
159. Dotty's #185, 501 West Main Street, Belgrade, MT, 59714
161. Warehouse, 3627 Losee Road, North Las Vegas, NV, 89030
162. Dotty's #115, 2312 E Craig Rd, North Las Vegas, NV, 89030
164. 450 East Winnemucca Boulevard, Winnemucca, NV, 89445
165. Dotty's #148, 8471 Farm Road, Las Vegas, NV, 89131

$1,000,000 Earth Movement **annual aggregate** for all coverages provided at the following **location**(s):

9. Dotty's #10, 2260 East William Street, Carson City, NV, 89701
10. Dotty's #11, 192 Lemmon Drive, Reno, NV, 89506
11. Dotty's #12, 3771 South Carson Street, Carson City, NV, 89701
12. Dotty's #13, 1075 North Hills Boulevard Ste 130, Reno, NV, 89506
19. Dotty's #20, 2256 Oddie Boulevard, Sparks, NV, 89431


*© 2017 AFM. All rights reserved.*

# DECLARATIONS

SECTION F, **SUB-LIMITS**, continued:

22. Dotty's #23, 5480 Meadowood Mall Circle, Reno, NV, 89502
23. Dotty's #24, 3304 South McCarran Boulevard, Reno, NV, 89502
25. Dotty's #26, 155 Lemmon Drive Ste 101, Reno, NV, 89506
26. Dotty's #27, 533 East Prater Way, Sparks, NV, 89431
40. Dotty's #41, 5342 Sparks Boulevard #102, Sparks, NV, 89436
42. Dotty's #43, 475 Keystone Avenue, Reno, NV, 89503
44. Dotty's #45, 3305 Market Street Ste 100, Carson City, NV, 89706-8018
46. Dotty's #47, 2473 Wingfield Hills Road Ste 120, Sparks, NV, 89436
54. Dotty's #55, 145 US Highway 50 East, Dayton, NV, 89403
57. Dotty's #58, 4985 Kietzke Lane Ste B, Reno, NV, 89509
62. Dotty's #63, 2870 Northtowne Lane Ste 102-104, Reno, NV, 89512-2181
65. Dotty's #66, 193 Damonte Ranch Parkway Unit S, Reno, NV, 89521
70. Dotty's #71, 31 Highway 50 Ste 103, Stateline, NV, 89449
73. Dotty's #74, 4320 South Carson Street, Carson City, NV, 89701-8500
74. Dotty's #75, 5144 Mae Anne Avenue Ste A & B, Reno, NV, 89523
81. Dotty's #82, 120 North Main Street Stes A,B & C, Yerington, NV, 89447
87. Dotty's #88, 3331 Highway 50 East, Unit 5,6,7, Carson City, NV, 89701
88. Dotty's #89, 91 West Plumb Lane, Reno, NV, 89509
98. Dotty's #99, 1144 Victorian Avenue, Sparks, NV, 89431
103. Warehouse, 1210 Icehouse Avenue, Sparks, NV, 89431
104. Storage, 1225 Icehouse Avenue, Sparks, NV, 89431-5761
147. Bourbon Street Sports Bar #170, 1601 North Highway 395 A, Minden, NV, 89423
163. 2045 Highway 95, Hawthorne, NV, 89415

| | | |
|---|---|---|
| | $50,000 | Earth Movement **annual aggregate** as respects Errors and Omissions, Off-Premises Data Services, Off-Premises Service Interruption, Unnamed Property and Supply Chain combined. |
| 2. | $5,000,000 | Flood **annual aggregate** for all coverages provided, and is the maximum amount payable for all loss or damage caused by or resulting from Flood, not to exceed: |
| | $50,000 | Flood **annual aggregate** as respects Errors and Omissions, Off-Premises Data Services, Off-Premises Service Interruption, Unnamed Property and Supply Chain combined. |

**Additional Coverages**

| | |
|---|---|
| $1,000,000 | Accounts Receivable |
| $100,000 | Arson or Theft Reward |
| Policy Limit | Brand Protection |
| $100,000 | Change of Temperature |
| $100,000 | Communicable Disease - Property Damage **annual aggregate** |
| $500,000 | Data, Programs or Software **annual aggregate** |
| Policy Limit | Debris Removal |
| Policy Limit | Decontamination Costs |
| $100,000 | Deferred Payment |
| Policy Limit | Demolition and Increased Cost of Construction |
| $1,000,000 | Errors and Omissions |
| $250,000 | Expediting Expenses |
| $250,000 | **Fine Arts** not to exceed $10,000 per item for **irreplaceable Fine Arts** |
| $50,000 | Green Coverage not to exceed 25% of the amount of the property damage loss |
| $50,000 | Land and Water Clean Up Expense **annual aggregate** |
| $100,000 | Locks and Keys |
| $100,000 | Money and Securities |
| $2,500,000 | Newly Acquired Property |
| $50,000 | Off-Premises Data Services - Property Damage **annual aggregate** |


*© 2017 AFM. All rights reserved.*

# DECLARATIONS

SECTION F, **SUB-LIMITS**, continued:

| | |
|---|---|
| $1,000,000 | Off-Premises Service Interruption - Property Damage |
| $100,000 | Professional Fees |
| Policy Limit | Property Removed from a Location |
| Policy Limit | Protection and Preservation of Property - Property Damage not to exceed $250,000 for security costs |
| $100,000 | Tax Treatment |
| $100,000 | Tenants Legal Liability |
| | Terrorism Coverage and the Supplemental United States Certified Act of Terrorism Endorsement |
| $400,000,000 | A. United States Certified Act of Terrorism coverage |
| $100,000 | B. Terrorism Coverage for Locations Outside of the United States **annual aggregate** but not to exceed $100,000 **annual aggregate** for Property Removed from a Location, Unnamed Property and Flood |
| $500,000 | Transit not to exceed $250,000 for Business Interruption |
| $1,000,000 | Unnamed Property |
| $1,000,000 | **Valuable Papers and Records** not to exceed $10,000 per item for **irreplaceable Valuable Papers and Records** |

**Business Interruption Coverage**

| | |
|---|---|
| $60,000,000 | Gross Earnings not to exceed 30 days for **ordinary payroll** |
| $60,000,000 | Gross Profits for 12 months Period of Liability not to exceed 30 days for **ordinary payroll** |
| $60,000,000 | Rental Income |
| $10,000,000 | Extra Expense |

**Business Interruption Coverage Extensions**

| | |
|---|---|
| $100,000 | Attraction Property |
| 30 Days | Civil or Military Authority |
| $100,000 | Communicable Disease - Business Interruption **annual aggregate** for a 12 Month Period of Liability |
| Included in Data, Programs or Software | Computer Systems Non-Physical Damage **annual aggregate** |
| $100,000 | Contractual Penalties |
| $100,000 | Crisis Management not to exceed 30 Days |
| 90 Days | Extended Period of Liability |
| $500,000 | Ingress/Egress |
| $250,000 | Leasehold Interest |
| $100,000 | Logistics Extra Cost |
| $50,000 | Off-Premises Data Services - Business Interruption **annual aggregate** |
| $500,000 | Off-Premises Service Interruption - Business Interruption |
| Policy Limit | Protection and Preservation of Property - Business Interruption |
| $250,000 | Research and Development |
| $100,000 | Soft Costs |
| $500,000 | Supply Chain |


***© 2017 AFM. All rights reserved.***

# DECLARATIONS

SECTION F, **SUB-LIMITS**, continued:

**Real Estate Endorsement**

| | |
|---|---|
| $250,000 | Contingent Real Property |
| $250,000 | Emergency Evacuation Expense |
| $100,000 | Innkeeper's Liability not to exceed $10,000 per Hotel Guest |
| $250,000 | Tenant Relocation Expense |

## G. DEDUCTIBLE AMOUNT:

This Company will not be liable for loss or damage, including any insured Business Interruption loss, in any one **occurrence** until the amount of loss or damage exceeds the deductible amount shown below and then this Company will only be liable for its share of the loss or damage in excess of the deductible amount. If two or more deductibles apply to a single **occurrence**, then no more than the largest deductible amount will apply. However, this Policy allows for the application of separate and distinct deductibles and deductibles for specific loss or damage as shown below.

The following deductible amounts shall apply per **occurrence**, unless otherwise stated, for insured loss or damage under this Policy:

1. Earthquake (per **location** for all coverages provided):

   A. This Company will not be liable for loss or damage unless the amount of loss or damage exceeds 3% of the combined value of the property and annual business interruption value that would have been earned at the time of such loss or damage at the **location** where loss or damage occurs plus that proportion of the 100% business interruption value at all other **locations** where business interruption loss ensues, in accordance with the valuation and business interruption sections of this policy, subject to a minimum deductible amount of $100,000 per **location**. If coverage is provided for more than one **location**, this deductible percentage or minimum deductible amount will be applied separately to each **location**.

   Except:

   B. $100,000

   At the following **locations**:

   117. Laughlin River Lodge Hotel & Casino, 2700 South Casino Drive, Laughlin, NV, 89029


***© 2017 AFM. All rights reserved.***

# DECLARATIONS

SECTION G, **DEDUCTIBLE AMOUNT**, continued:

2. Flood (per **location** for all coverages provided):

   A. $100,000 at all **locations**.

   Except:

   B. $500,000 at the following **location**(s):

   117. Laughlin River Lodge Hotel & Casino, 2700 South Casino Drive, Laughlin, NV, 89029
   163. 2045 Highway 95, Hawthorne, NV, 89415

3. Boiler and Machinery:

   A. Property Damage: $25,000

   B. Business Interruption Average Daily Value:

   The business interruption deductible will be determined by multiplying the one hundred percent average daily value (ADV) by 1.

   The ADV will be calculated by dividing the sum of the 100% actual annual business interruption values that would have been earned had no loss occurred at the **location** where the physical damage happened plus that proportion of the 100% annual business interruption value at all other **locations** where Business Interruption loss ensues by the number of annual working days.

4. Communicable Disease Property Damage and Business Interruption:

   Qualifying Period: This Company will not be liable for loss or damage unless access is limited, restricted or prohibited in excess of 48 hours.

   Should this time be exceeded, the insured loss or damage will be calculated beginning from the time of loss subject to a deductible of:

   A. Property Damage: $25,000

   B. Business Interruption Day Equivalent Deductible:

   The business interruption deductible will be determined by multiplying the one hundred percent day equivalent (DEQ) by 2.

   The day equivalent is the 100% actual annual business interruption value that would have been earned had no loss occurred at the **location** where the physical damage happened plus that proportion of the 100% annual business interruption value at all other **locations** where business interruption loss ensues, divided by the number of annual working days.


***© 2017 AFM. All rights reserved.***

# DECLARATIONS

SECTION G, **DEDUCTIBLE AMOUNT**, continued:

5. Computer Systems Non-Physical Damage:

   Qualifying Period: This Company will not be liable for loss resulting from the failure of the Insured's electronic data processing or media to operate as a direct result of a malicious act directed at the Named Insured, unless the Period of Liability exceeds 48 hours.

   The Qualifying Period for the cost to temporarily protect under Item 4. b) shall be waived.

   Should this time be exceeded, the insured loss or damage will be calculated beginning from the time of loss subject to a Business Interruption Day Equivalent Deductible:

   The business interruption deductible will be determined by multiplying the one hundred percent day equivalent (DEQ) by 2..

   The day equivalent is the 100% actual annual business interruption value that would have been earned had no loss occurred at the **location** where the physical damage happened plus that proportion of the 100% annual business interruption value at all other **locations** where business interruption loss ensues, divided by the number of annual working days.

6. Data, Programs, or Software:

   Qualifying Period: This Company will not be liable for loss or damage caused by the malicious introduction of a machine code or instruction, unless the time to recreate or restore physically damaged property exceeds 48 hours.

   Should this time be exceeded, the insured loss or damage will be calculated beginning from the time of loss subject to a deductible of:

   A. Property Damage: $25,000

   B. Business Interruption Day Equivalent Deductible:

   The business interruption deductible will be determined by multiplying the one hundred percent day equivalent (DEQ) by 2.

   The day equivalent is the 100% actual annual business interruption value that would have been earned had no loss occurred at the **location** where the physical damage happened plus that proportion of the 100% annual business interruption value at all other **locations** where business interruption loss ensues, divided by the number of annual working days.


***© 2017 AFM. All rights reserved.***

# DECLARATIONS

SECTION G, **DEDUCTIBLE AMOUNT**, continued:

7. Off-Premises Data Services Property Damage and Business Interruption:

Qualifying Period: This Company will not be liable for loss or damage unless the Period of Liability exceeds 48 hours.

Should this time be exceeded, the insured loss or damage will be calculated beginning from the time of loss subject to a deductible of:

A. Property Damage: $25,000

B. Business Interruption Day Equivalent Deductible:

The business interruption deductible will be determined by multiplying the one hundred percent day equivalent (DEQ) by 2.

The day equivalent is the 100% actual annual business interruption value that would have been earned had no loss occurred at the **location** where the physical damage happened plus that proportion of the 100% annual business interruption value at all other **locations** where business interruption loss ensues, divided by the number of annual working days.

8. Off Premises Service Interruption Property Damage and Business Interruption:

Qualifying Period: This Company will not be liable for loss or damage unless the Period of Liability exceeds 48 hours.

Should this time be exceeded, the insured loss or damage will be calculated beginning from the time of loss subject to the deductible(s) that would have applied to the cause of the interruption of services, but not less than:

A. Property Damage: $25,000

B. Business Interruption Day Equivalent Deductible:

The business interruption deductible will be determined by multiplying the one hundred percent day equivalent (DEQ) by 2.

The day equivalent is the 100% actual annual business interruption value that would have been earned had no loss occurred at the **location** where the physical damage happened plus that proportion of the 100% annual business interruption value at all other **locations** where business interruption loss ensues, divided by the number of annual working days.

9. $25,000 All Other Losses.


***© 2017 AFM. All rights reserved.***

# DECLARATIONS

## H. SPECIAL TERMS AND CONDITIONS:

1. **United States Certified Act of Terrorism 2015**

As respects the United States, its territories and possessions and the Commonwealth of Puerto Rico, the definition of terrorism contained in DEFINITIONS is declared null and void and it is agreed that an event defined as a Certified Act of Terrorism under the terms of the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT attached to this Policy shall be considered terrorism within the terms of this policy. Notwithstanding anything contained in this Policy to the contrary, this Policy provides coverage for direct physical loss or damage to insured property and any resulting Business Interruption loss, as provided in the Policy, caused by or resulting from a Certified Act of Terrorism only to the extent coverage is provided under the terms and conditions of the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT attached to this policy. Any difference in limit between loss recoverable under the SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT and this Policy is not recoverable under this Policy.

2. **Data, Programs or Software Split Sublimit for Malicious Introduction of Machine Code and Computer Systems Non-Physical Damage - PRO 847 (12/17)**

The Data, Programs or Software SUB-LIMIT in the ADDITIONAL COVERAGES and Computer Systems Non-Physical Damage in the BUSINESS INTERRUPTION COVERAGE EXTENSIONS are amended to:

| | |
|---|---|
| $2,500,000 | Data, Programs or Software for physical loss or damage not caused by the malicious introduction of a machine code or instruction |
| $500,000 | Data, Programs or Software for physical loss or damage caused by the malicious introduction of a machine code or instruction and Computer Systems Non-Physical Damage combined **annual aggregate**. |

3. **Additional Named Insured - PRO 65 (04/15)**

The following is (are) added as Additional Named Insured(s) on property described below, as their interest may appear:

| Additional Named Insured and Address | Location/ Interest |
|---|---|
| Double Enterprises, LLC<br>3645/3649 Losee Rd &<br>1412 E Gowan<br>Las Vegas, NV 89030 | Slot Machines at the following locations:<br><br>152. Dotty's #177<br>2200 West Horizon Ridge Parkway,<br>Suite G, Henderson, NV, 89052<br><br>153. Dotty's #179<br>1309 Grand Avenue,<br>Billings, MT, 59102<br><br>154. Dotty's #180<br>4010 Montana Sapphire Lane,<br>Billings, MT, 59106<br><br>155. Dotty's #181<br>900 South 24th Street West,<br>Billings, MT, 59102 |


***© 2017 AFM. All rights reserved.***

# DECLARATIONS

SECTION H, **SPECIAL TERMS AND CONDITIONS**, continued:

| | |
|---|---|
| | 156. Dotty's #182<br>415 Main Street,<br>Billings, MT, 59105 |
| | 157. Dotty's #183<br>2107 North 7th Avenue,<br>Bozeman, MT, 59715 |
| | 158. Dotty's #184<br>2000 Dewey Boulevard,<br>Butte, MT, 59701 |
| | 159. Dotty's #185<br>501 West Main Street,<br>Belgrade, MT, 59714 |
| | 160. Dotty's #186<br>1730 Cedar Street,<br>Helena, MT, 59601 |
| Elite Properties, LLC<br>3645/3649 Losee Rd &<br>1412 E Gowan Rd<br>Las Vegas, NV 89030 | Real Property Only, at the following locations:<br><br>158. Dotty's #184<br>2000 Dewey Boulevard,<br>Butte, MT, 59701<br><br>159. Dotty's #185<br>501 West Main Street,<br>Belgrade, MT, 59714 |
| Forbes Enterprise, Inc. and City National Bank<br>1788 Valenzano Way<br>Henderson, NV 89012 | 162. Dotty's #115<br>2312 E Craig Rd,<br>North Las Vegas, NV 89030 |


***© 2017 AFM. All rights reserved.***

# DECLARATIONS

## I. INDEX OF FORMS:

The following forms are made part of this Policy:

| Title | Form No. | Edition |
|---|---|---|
| Declarations Page | PRO DEC 4100 | (04/15) |
| Declarations | PRO S-1 4100 | (01/17) |
| All Risk Coverage | PRO AR 4100 | (01/17) |
| Real Estate Endorsement | PRO RE CRP 4100 | (01/17) |
| Supplemental United States Certified Act of Terrorism Endorsement | 7312 | (1/15) |
| Montana Amendatory Endorsement | AFM 6446 | (04/15) |
| Nevada Amendatory Endorsement | AFM 6513 | (04/15) |


***© 2017 AFM. All rights reserved.***

# DECLARATIONS

**Location Schedule**

1. Dotty's #1, 1131 East Tropicana Avenue, Las Vegas, NV, 89119
2. Dotty's #3, 9018 West Sahara Avenue, Las Vegas, NV, 89117-5744
3. Dotty's #4, 1854 East Charleston Boulevard, Las Vegas, NV, 89104
4. Dotty's #5, 2823 North Green Valley Parkway, Henderson, NV, 89014
5. Dotty's #6, 4350 Las Vegas Boulevard, Las Vegas, NV, 89115-0513
6. Dotty's #7, 2101 South Decatur Boulevard, Las Vegas, NV, 89102
7. Dotty's #8, 1133 North Boulder Highway, Henderson, NV, 89011
8. Dotty's #9, 2300 South Maryland Parkway, Las Vegas, NV, 89104
9. Dotty's #10, 2260 East William Street, Carson City, NV, 89701
10. Dotty's #11, 192 Lemmon Drive, Reno, NV, 89506
11. Dotty's #12, 3771 South Carson Street, Carson City, NV, 89701
12. Dotty's #13, 1075 North Hills Boulevard Ste 130, Reno, NV, 89506
13. Dotty's #14, 7950 West Tropical Parkway Ste 110, Las Vegas, NV, 89149
14. Dotty's #15, 2839 West Sahara Avenue, Las Vegas, NV, 89102
15. Dotty's #16, 2929 East Desert Inn Road Ste 32-35, Las Vegas, NV, 89121-3604
16. Dotty's #17, 2111 West Williams Avenue, Fallon, NV, 89406
17. Dotty's #18, 4821 Spring Mountain Road Ste L, Las Vegas, NV, 89102
18. Dotty's #19, 560 Marks Street Ste F, Henderson, NV, 89014
19. Dotty's #20, 2256 Oddie Boulevard, Sparks, NV, 89431
20. Dotty's #21, 250 South Highway 160 Ste B1, Pahrump, NV, 89048
21. Dotty's #22, 1350 East Flamingo Road, Las Vegas, NV, 89119
22. Dotty's #23, 5480 Meadowood Mall Circle, Reno, NV, 89502
23. Dotty's #24, 3304 South McCarran Boulevard, Reno, NV, 89502
24. Dotty's #25, 4801 South Eastern Avenue, Las Vegas, NV, 89119
25. Dotty's #26, 155 Lemmon Drive Ste 101, Reno, NV, 89506
26. Dotty's #27, 533 East Prater Way, Sparks, NV, 89431
27. Dotty's #28, 5191 West Charleston Boulevard, Las Vegas, NV, 89146
28. Dotty's #29, 9605 West Tropicana Avenue, Las Vegas, NV, 89147
29. Dotty's #30, 9031 West Flamingo Road, Las Vegas, NV, 89147
30. Dotty's #31, 110 East Bruner Avenue Ste 100, Las Vegas, NV, 89183-5700
31. Dotty's #32, 1520 North Eastern Avenue Ste 113, Las Vegas, NV, 89101
32. Dotty's #33, 1330 South Highway 160 # 32, Pahrump, NV, 89048
33. Dotty's #34, 4437 West Charleston Boulevard, Las Vegas, NV, 89102
34. Dotty's #35, 1744 Mountain City Highway Ste 102, Elko, NV, 89801
35. Dotty's #36, 6060 West Windmill Lane, Las Vegas, NV, 89139
36. Dotty's #37, 2525 Mountain City Highway Ste 101, Elko, NV, 89801
37. Dotty's #38, 8625 South Rainbow Boulevard, Las Vegas, NV, 89139
38. Dotty's #39, 7950 South Rainbow Boulevard, Las Vegas, NV, 89139
39. Dotty's #40, 9185 South Jones Boulevard, Las Vegas, NV, 89139
40. Dotty's #41, 5342 Sparks Boulevard #102, Sparks, NV, 89436
41. Dotty's #42, 10925 South Maryland Parkway, Las Vegas, NV, 89052
42. Dotty's #43, 475 Keystone Avenue, Reno, NV, 89503
43. Dotty's #44, 9755 West Russell Road, Las Vegas, NV, 89148-5533
44. Dotty's #45, 3305 Market Street Ste 100, Carson City, NV, 89706-8018
45. Dotty's #46, 2501 East Lake Mead Boulevard, North Las Vegas, NV, 89030
46. Dotty's #47, 2473 Wingfield Hills Road Ste 120, Sparks, NV, 89436
47. Dotty's #48, 2075 Palm Street, Las Vegas, NV, 89104
48. Dotty's #49, 6910 East Lake Mead Boulevard, Las Vegas, NV, 89156
49. Dotty's #50, 4730 Blue Diamond Road, Las Vegas, NV, 89139
50. Dotty's #51, 2877 East Charleston Boulevard Ste B, Las Vegas, NV, 89104-6692
51. Dotty's #52, 6142 West Flamingo Road, Las Vegas, NV, 89103
52. Dotty's #53, 1366 West Cheyenne Ste 112 & 113, North Las Vegas, NV, 89030-7837
53. Dotty's #54, 5990 Losee Road Ste 111,112 & 113, North Las Vegas, NV, 89081-6204
54. Dotty's #55, 145 US Highway 50 East, Dayton, NV, 89403


***© 2017 AFM. All rights reserved.***

# DECLARATIONS

55. Dotty's #56, 840 North Decatur Boulevard, Las Vegas, NV, 89107-1905
56. Dotty's #57, 3685 South Rainbow Boulevard Ste 100, Las Vegas, NV, 89103
57. Dotty's #58, 4985 Kietzke Lane Ste B, Reno, NV, 89509
58. Dotty's #59, 3870 East Flamingo Road Ste A-9, Las Vegas, NV, 89121
59. Dotty's #60, 1750 South Rainbow Boulevard, Las Vegas, NV, 89146-2948
60. Dotty's #61, 1060 West Pioneer Boulevard, Mesquite, NV, 89027-8892
61. Dotty's #62, 4213 Boulder Highway Building 1 Ste F-M, Las Vegas, NV, 89121
62. Dotty's #63, 2870 Northtowne Lane Ste 102-104, Reno, NV, 89512-2181
63. Dotty's #64, 4760 West Sahara Avenue Ste 1, Las Vegas, NV, 89102
64. Dotty's #65, 3405 Construction Way, Winnemucca, NV, 89445-3668
65. Dotty's #66, 193 Damonte Ranch Parkway Unit S, Reno, NV, 89521
66. Dotty's #67, 2795 West Mead Lane Boulevard Lot 1-1-2, Las Vegas, NV, 89101
67. Dotty's #68, 2090 East Serene Avenue, Las Vegas, NV, 89123
68. Dotty's #69, 865 North Lamb Boulevard Suites 6-9, Las Vegas, NV, 89110
69. Dotty's #70, 2089 North Jones Boulevard, Las Vegas, NV, 89108
70. Dotty's #71, 31 Highway 50 Ste 103, Stateline, NV, 89449
71. Dotty's #72, 1631 North Rancho Drive, Las Vegas, NV, 89106
72. Dotty's #73, 310 South Decatur Boulevard, Las Vegas, NV, 89107
73. Dotty's #74, 4320 South Carson Street, Carson City, NV, 89701-8500
74. Dotty's #75, 5144 Mae Anne Avenue Ste A & B, Reno, NV, 89523
75. Dotty's #76, 754 South Boulder Highway, Henderson, NV, 89015
76. Dotty's #77, 1511 North Nellis Boulevard, Las Vegas, NV, 89110-5317
77. Dotty's #78, 3377 North Rancho Drive, Las Vegas, NV, 89130
78. Dotty's #79, 1440 Highway 95A North Ste 1, Fernley, NV, 89408
79. Dotty's #80, 4213 Boulder Highway Building 1 Ste A-E, Las Vegas, NV, 89121
80. Dotty's #81, 1987 North Nellis Boulevard Ste D12, Las Vegas, NV, 89115
81. Dotty's #82, 120 North Main Street Stes A,B & C, Yerington, NV, 89447
82. Dotty's #83, 6000 West Charleston Boulevard, Las Vegas, NV, 89146
83. Dotty's #84, 8699 West Charleston Boulevard, Las Vegas, NV, 89117
84. Dotty's #85, 4790 West Ann Road, North Las Vegas, NV, 89031-3463
85. Dotty's #86, 3820 Blue Diamond Road, Las Vegas, NV, 89139
86. Dotty's #87, 9495 Las Vegas Boulevard South, Las Vegas, NV, 89123
87. Dotty's #88, 3331 Highway 50 East, Unit 5,6,7, Carson City, NV, 89701
88. Dotty's #89, 91 West Plumb Lane, Reno, NV, 89509
89. Dotty's #90, 5040 Boulder Highway # 100 & 105, Las Vegas, NV, 89122
90. Dotty's #91, 100 Trescartes Avenue, Spring Creek, NV, 89815
91. Dotty's #92, 7380 South Eastern Avenue, las Vegas, NV, 89123
92. Dotty's #93, 30 East Horizon Ridge Parkway, Henderson, NV, 89002
93. Office, 3645 & 3649 North Losee Road, 1412 East Gowan, North Las Vegas, NV, 89030, Index No. 079306.08
94. Dotty's #95, 10170 West Tropicana Avenue #141-143, Las Vegas, NV, 89147
95. Dotty's #96, 7310 Arroyo Crossing Parkway #110 & #120, Las Vegas, NV, 89113
96. Dotty's #97, 3175 East Tropicana Avenue Ste D, Las Vegas, NV, 89121
97. Dotty's #98, 5643 Centennial Center Boulevard #160&165, Las Vegas, NV, 89149
98. Dotty's #99, 1144 Victorian Avenue, Sparks, NV, 89431
99. Dotty's #100, 420 North Nellis Boulevard Suite A12, Las Vegas, NV, 89110
100. Dotty's #101, 2940 South Durango Drive, Las Vegas, NV, 89117
101. Dotty's #102, 8545 West Warm Springs Road, Las Vegas, NV, 89113
102. Dotty's #103, 3610 South Highway 160 Suite 403, Pahrump, NV, 89048
103. Warehouse, 1210 Icehouse Avenue, Sparks, NV, 89431
104. Storage, 1225 Icehouse Avenue, Sparks, NV, 89431-5761
105. Dotty's #106, 2397 Casey Road, #101-103, Fallon, NV, 89406
106. Dotty's #107, 3345 East Sahara Avenue, Las Vegas, NV, 89104
107. Dotty's #108, 1690 North Decatur Boulevard, Las Vegas, NV, 89108
108. Bourbon Street Sports Bar, 2750 East Craig Road, North Las Vegas, NV, 89030
109. Dotty's #110, 10000 West Sahara Avenue Suite 100, Las Vegas, NV, 89117


***© 2017 AFM. All rights reserved.***

# DECLARATIONS

110. Dotty's #111, 2428 East Cheyenne Avenue, North Las Vegas, NV, 89030
111. Dottys #112, 2542 Las Vegas Boulevard North, North Las Vegas, NV, 89030, Index No. 001200.86
112. Dottys #113, 550 El Dorado Road, Mesquite, NV, 89027
113. Storage, 835 West Bonanza Road, Las Vegas, NV, 89106
114. Storage, 55 Timberline Drive, Bozeman, MT, 59718
115. Hangar, 4511 West Cheyenne Avenue #301/Hangar #3, North Las Vegas, NV, 89032
116. Hoover Dam Lodge - Hotel & Casino, 18000 East Highway 93 South, Boulder City, NV, 89005, Index No. 079450.40
117. Laughlin River Lodge Hotel & Casino, 2700 South Casino Drive, Laughlin, NV, 89029, Index No. 079309.52
118. La Villita #3, 642 South Boulder Highway, Henderson, NV, 89015
119. Boulder Lodge Casino, 920 South Boulder Highway, Henderson, NV, 89015
120. Bourbon Street Sports Bar #137, 2696 West Ann Road, North Las Vegas, NV, 89031
121. Storage / Office / Warehouse, 951 West Main Street Suite G, Elko, NV, 89801
122. Dotty's #138, 4341 North Rancho Drive, Las Vegas, NV, 89130-3407
123. Red Dragon Sports Bar #116, 6168 Spring Mountain Road, Las Vegas, NV, 89146
124. Dotty's #141, 5570 Centennial Center Boulevard Suite 130-140, Las Vegas, NV, 89149
125. Dotty's #104, 4550 East Tropicana Avenue, Las Vegas, NV, 89121-6705
126. Bourbon Street Sports Bar #142, 775 West Craig Boulevard Suites 152-160, North Las Vegas, NV, 89032
127. Bourbon Street Sports Bar #144, 7287 West Azure Drive, Las Vegas, NV, 89130
128. Bourbon Street Sports Bar #146, 2210-2216 Paradise Road, Las Vegas, NV, 89104
129. Red Dragon Sports Bar #143, 4550, 4552 & 4560 Spring Mountain Road, Las Vegas, NV, 89146
130. Bourbon Street Sports Bar #147, 281 West Centennial Parkway #103, North Las Vegas, NV, 89084
131. Dotty's #148, Southwestern Corner of Farm Road and Durange Drive APN 12517601010, Las Vegas, NV, 89104
132. Bourbon Street Sports Bar #149, 6670 South Tenaya Way #100, Las Vegas, NV, 89113
133. Bourbon Street Sports Bar #150, 218 East Tropicana Avenue, Las Vegas, NV, 89169
134. Dotty's #151, 15 North Nellis Boulevard, Las Vegas, NV, 89110
135. Bourbon Street Sports Bar #152, 4405 West Flamingo Road, Las Vegas, NV, 89103
136. Bourbon Street Sports Bar #153, 721 Mall Ring Circle, Henderson, NV, 89104
137. Dotty's #154, 6221 North Decatur Boulevard, North Las Vegas, NV, 89084
138. Dotty's #156, 2401 West Bonanza Road, Suite A, B, & D, Las Vegas, NV, 89106
139. Bourbon Street Sports Bar #155, 6020 Badura Avenue, Las Vegas, NV, 89118
140. 4550 West Flamingo Suite 6-9, Las Vegas, NV, 89147
141. 1288 South Nellis Boulevard, Las Vegas, NV, 89104-5782
142. Bourbon Street Sports Bar #163, 2990 Saint Rose Parkway, Henderson, NV, 89052-4446
143. Bourbon Street Sports Bar #145, 2610 West Sahara Avenue, Las Vegas, NV, 89102
144. Dotty's #173, 9436 West Lake Mead Boulevard, Suites 1-5, Las Vegas, NV, 89134
145. Dotty's #139, 3220 North Jones Boulevard, Suites 1-5, Las Vegas, NV, 89108
146. La Villita #2, 821 North Lamb, #9, Las Vegas, NV, 89110
147. Bourbon Street Sports Bar #170, 1601 North Highway 395 A, Minden, NV, 89423
148. Bourbon Street Sports Bar #187, 3720 West Lake Mead Boulevard, North Las Vegas, NV, 89032
149. Dotty's #174, 4310 East Tropicana Avenue, Las Vegas, NV, 89121
150. Bourbon Street Sports Bar #175, 7777 West Sahara Avenue, Las Vegas, NV, 89117
151. Warehouse, 4819 Midland Road, Billings, MT, 59101-6337
152. Dotty's #177, 2200 West Horizon Ridge Parkway, Suite G, Henderson, NV, 89052
153. Dotty's #179, 1309 Grand Avenue, Billings, MT, 59102
154. Dotty's #180, 4010 Montana Sapphire Lane, Billings, MT, 59106
155. Dotty's #181, 900 South 24th Street West, Billings, MT, 59102
156. Dotty's #182, 415 Main Street, Billings, MT, 59105
157. Dotty's #183, 2107 North 7th Avenue, Bozeman, MT, 59715
158. Dotty's #184, 2000 Dewey Boulevard, Butte, MT, 59701
159. Dotty's #185, 501 West Main Street, Belgrade, MT, 59714
160. Dotty's #186, 1730 Cedar Street, Helena, MT, 59601
161. Warehouse, 3627 Losee Road, North Las Vegas, NV, 89030
162. Dotty's #115, 2312 E Craig Rd, North Las Vegas, NV, 89030
163. 2045 Highway 95, Hawthorne, NV, 89415


***© 2017 AFM. All rights reserved.***

# DECLARATIONS

164. 450 East Winnemucca Boulevard, Winnemucca, NV, 89445
165. Dotty's #148, 8471 Farm Road, Las Vegas, NV, 89131


***© 2017 AFM. All rights reserved.***

AFM
Member of the FM Global Group

proVision

# ALL RISK COVERAGE

## Table of Contents

**PROPERTY INSURED** .......... 1
Real Property .......... 1
Personal Property .......... 1
**PROPERTY EXCLUDED** .......... 1
**EXCLUSIONS** .......... 2
Group I .......... 2
Group II .......... 3
Group III .......... 4
**ADDITIONAL COVERAGES** .......... 5
Accounts Receivable .......... 5
Arson or Theft Reward .......... 5
Brand Protection .......... 6
Change of Temperature .......... 6
Communicable Disease – Property Damage .......... 6
Data, Programs or Software .......... 7
Debris Removal .......... 8
Decontamination Costs .......... 8
Deferred Payment .......... 8
Demolition and Increased Cost of Construction .......... 9
Earth Movement .......... 10
Errors and Omissions .......... 10
Expediting Expenses .......... 10
Fine Arts and Valuable Papers and Records .......... 11
Flood .......... 11
Green Coverage .......... 11
Land and Water Clean Up Expense .......... 12
Locks and Keys .......... 12
Money and Securities .......... 12
Newly Acquired Property .......... 12


*© 2017 AFM. All rights reserved.*

Off-Premises Data Services – Property Damage ..... 13
Off-Premises Service Interruption – Property Damage ..... 13
Professional Fees ..... 13
Property Removed from a Location ..... 14
Protection and Preservation of Property – Property Damage ..... 14
Tax Treatment ..... 14
Tenants Legal Liability ..... 15
Terrorism ..... 15
Transit ..... 16
Unnamed Property ..... 18
**BUSINESS INTERRUPTION** ..... 19
Loss Insured ..... 19
Business Interruption Coverage ..... 20
Gross Earnings ..... 20
Gross Profits ..... 20
Rental Income ..... 21
Extra Expense ..... 22
BI Select ..... 22
Period of Liability ..... 22
Business Interruption Exclusions ..... 23
**BUSINESS INTERRUPTION COVERAGE EXTENSIONS** ..... 24
Attraction Property ..... 24
Civil or Military Authority ..... 24
Communicable Disease – Business Interruption ..... 24
Computer Systems Non-Physical Damage ..... 25
Contractual Penalties ..... 25
Crisis Management ..... 26
Extended Period of Liability ..... 26
Ingress/Egress ..... 27
Leasehold Interest ..... 27
Logistics Extra Cost ..... 27
Off-Premises Data Services – Business Interruption ..... 28
Off-Premises Service Interruption – Business Interruption ..... 29
Protection and Preservation of Property – Business Interruption ..... 30
Research and Development ..... 30


*© 2017 AFM. All rights reserved.*

Soft Costs ....... 30
Supply Chain ....... 30
**LOSS ADJUSTMENT AND SETTLEMENT** ....... 32
Abandonment ....... 32
Appraisal ....... 32
Collection From Others ....... 32
Company Option ....... 32
Currency for Loss Payment ....... 32
Legal Action Against this Company ....... 33
Loss Adjustment and Payable ....... 33
Other Insurance ....... 33
Requirements in Case of Loss ....... 33
Settlement of Claims ....... 34
Subrogation ....... 35
Valuation ....... 35
**GENERAL CONDITIONS** ....... 37
Application of Policy to Date or Time Recognition ....... 37
Cancellation/Non-Renewal ....... 37
Conformity to Statute ....... 37
First Named Insured ....... 37
Increase in Hazard ....... 38
Inspections ....... 38
Liberalization Clause ....... 38
Misrepresentation and Fraud ....... 38
Mortgagee/Lenders Loss Payable ....... 38
Policy Modification ....... 40
Reinstatement of Limits after a Loss ....... 40
Suspension ....... 40
Transfer or Rights and Duties under this Policy ....... 40
**DEFINITIONS** ....... 41


*© 2017 AFM. All rights reserved.*

AFM

Member of the FM Global Group

proVision

# ALL RISK COVERAGE

This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy.

## A. PROPERTY INSURED

This Policy insures the following property, unless otherwise excluded elsewhere in this Policy, at or within 1,000 feet of a **described location,** to the extent of the interest of the Insured in such property.

**1.** Real Property in which the Insured has an insurable interest.

**2.** Personal Property:

**a)** Owned by the Insured.

**b)** Consisting of improvements and betterments in which the Insured has an insurable interest.

**c)** Of directors, officers and employees of the Insured.

**d)** Of others in the Insured's custody to the extent the Insured is under obligation to keep insured for physical loss or damage insured by this Policy.

**e)** Of others in the Insured's custody to the extent of the Insured's legal liability for insured physical loss or damage to such Personal Property.

This Company may defend that portion of any suit against the Insured that alleges such liability and seeks damages for such insured physical loss or damage to such Personal Property. This Company may, without prejudice, investigate, negotiate and settle any claim or suit as this Company deems expedient.

This Policy also insures the interest of contractors and subcontractors in insured property during construction, while at or within 1,000 feet of a **described location**, to the extent that the Insured has agreed, prior to loss, to keep such interest insured for insured physical loss or damage to such property. Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and will not extend to any Business Interruption coverage provided in this Policy.

## B. PROPERTY EXCLUDED

This Policy excludes the following except as otherwise stated in this Policy:

**1.** Land, water or any substance in or on land.

**2.** Growing crops, standing timber or animals.

**3.** Bridges and tunnels intended for use by motor vehicles licensed for highway use.

**4.** Reservoirs, canals, dikes or dams.

**5.** Docks, piers or wharves which are not a structural part of a building.

**6.** Currency, money, notes or securities, except as provided by the Money and Securities coverage in this Policy.

**7.** Motor vehicles licensed for highway use or owned by directors, officers or employees of the Insured.


***© 2017 AFM. All rights reserved.***

**8.** Satellites, aircraft or watercraft, except if on land, unfueled and manufactured by the Insured.

**9.** Property sold by the Insured under conditional sale, trust agreement, installment payment or other deferred payment plan after delivery to the customer, except as provided by the Deferred Payment coverage in this Policy.

**10.** Underground mines or mine shafts or any property within such mine or shaft.

**11.** Property while in transit, except as otherwise provided in this Policy.

**12.** Electronic data, programs or software, except when they are stock in process, finished goods manufactured by the Insured, raw materials, supplies or other merchandise not manufactured by the Insured or as provided by the Data, Programs or Software coverage in this Policy.

**13.** Property while located **offshore**, except as provided by the Transit coverage in this Policy.

## C. EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated:

**GROUP I:** This Policy excludes loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss or damage:

**1.** Nuclear reaction or nuclear radiation or radioactive contamination. However:

**a)** If physical damage by fire or sprinkler leakage results, then only that resulting damage is insured; but not including any loss or damage due to nuclear reaction, radiation or radioactive contamination**.**

**b)** This Policy does insure physical damage directly caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the **location**, provided that on the date of loss, there is neither a nuclear reactor nor any new or used nuclear fuel on the **location**. This coverage does not apply to any act, loss or damage excluded in Group I Item 2f of this Exclusions clause.

This exclusion Group I Item 1 and the exceptions in Group I Item 1a and Group I Item 1b above do not apply to any act, loss or damage which also comes within the terms of exclusion Group I Item 2b of this Exclusions clause.

**2. a)** Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any:

**i)** Government or sovereign power (de jure or de facto);

**ii)** Military, naval or air forces; or

**iii)** Agent or authority of any party specified in i) or ii) above.

**b)** Discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

**c)** Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an event.

**d)** Seizure or destruction under quarantine or custom regulation, or confiscation by order of any governmental or public authority.

**e)** Risks of contraband, or illegal transportation or trade.


***© 2017 AFM. All rights reserved.***

**f)** **Terrorism**, including action taken to prevent, defend against, respond to or retaliate against **terrorism** or suspected **terrorism**, except to the extent provided in the Terrorism coverage of this Policy. However, if direct loss or damage by fire results from any of these acts (unless committed by or on behalf of the Insured), then this Policy covers only to the extent of the **actual cash value** of the resulting direct loss or damage by fire to insured property. This coverage exception for such resulting fire loss or damage does not apply to:

**i)** Direct loss or damage by fire which results from any other applicable exclusion in the Policy, including the discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

**ii)** Any coverage provided in the Business Interruption section of this Policy or to any other coverages provided by this Policy.

Any act which satisfies the definition of **terrorism** shall not be considered to be vandalism, malicious mischief, riot, civil commotion or any other risk of physical loss or damage covered elsewhere in this Policy.

If any act which satisfies the definition of **terrorism** also comes within the terms of Group I Item 2a of this Exclusions clause then Group I Item 2a applies in place of this Group I Item 2f exclusion.

If any act which satisfies the definition of **terrorism** also comes within the terms of Group I Item 2b of this Exclusions clause then Group I Item 2b applies in place of this Group I Item 2f exclusion.

If any act which satisfies the definition of **terrorism** also comes within the terms of Group I Item 2c of this Exclusions clause then Group I Item 2c applies in place of this Group I Item 2f exclusion.

If any act excluded herein involves nuclear reaction, nuclear radiation or radioactive contamination, this Group I Item 2f exclusion applies in place of Group I Item 1 of this Exclusions clause.

**3.** Any dishonest act, including but not limited to theft, committed alone or in collusion with others, at any time by:

**a)** An Insured or any proprietor, partner, director, trustee, officer or employee of an Insured; or

**b)** Any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by an Insured to do anything in connection with property insured under this Policy.

This Policy does insure acts of direct insured physical damage intentionally caused by an employee of an Insured or any individual specified in b above, and done without the knowledge of the Insured. This coverage does not apply to any act excluded in Group I Item 2f of this Exclusions clause. In no event does this Policy cover loss by theft by any individual specified in a or b above.

**4.** Lack of incoming electricity, fuel, water, gas, steam or refrigerant; outgoing sewerage; or incoming or outgoing voice, data or video; all when caused by an event off the **location**, except as provided by the Off-Premises Data Services and Off-Premises Service Interruption coverages in this Policy. If the lack of such a service directly causes insured physical damage at the **location**, then only that resulting damage is insured.

**5.** **Earth movement**, except as otherwise provided in this Policy.

**6.** **Flood,** except as otherwise provided in this Policy.

**7.** Seepage or influx of water from natural underground sources.

**GROUP II:** This Policy excludes the following, however, if physical damage not excluded by this Policy results, then only that resulting damage is insured:


***© 2017 AFM. All rights reserved.***

**1.** Wear and tear, deterioration, depletion, rust, corrosion, erosion, inherent vice or latent defect.

**2.** Faulty workmanship, material, construction or design.

**3.** Loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested or otherwise worked on.

**4.** Loss or damage caused by or resulting from:

**a)** Changes of temperature, except damage to machinery or equipment including fire protective equipment;

**b)** Changes in relative humidity,

All whether atmospheric or not, except as provided by the Change of Temperature and Off-Premises Service Interruption coverages in this Policy.

**5.** Settling, cracking, shrinking, bulging or expansion of:

**a)** Foundations.

**b)** Walls.

**c)** Floors.

**d)** Pavements or roadways.

**e)** Roofs.

**f)** Ceilings.

**6.** Loss or damage to personal property in the open from rain, sleet, snow, sand or dust.

**7.** Theft of precious metal or stones, except when such property is used by the Insured for industrial purposes.

**8.** Insect, animal or vermin damage.

**GROUP III:** This Policy excludes:

**1.** Indirect or remote loss or damage.

**2.** Interruption of business, except to the extent provided in this Policy.

**3.** Loss of market or loss of use.

**4.** Loss or damage or deterioration arising from any delay.

**5.** Mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss.

**6.** Loss from enforcement of any law or ordinance:

**a)** Regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or

**b)** Requiring the demolition of any property, including the cost in removing its debris;


***© 2017 AFM. All rights reserved.***

Except as provided by the Decontamination Costs and Demolition and Increased Cost of Construction coverages in this Policy.

**7.** Loss or damage resulting from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretense.

**8.** **Contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If **contamination** due only to the actual not suspected presence of **contaminant(s)** directly results from other physical damage not excluded by this Policy, then only physical damage caused by such **contamination** may be insured. This exclusion does not apply to radioactive contamination which is excluded elsewhere in this Policy.

**9.** Shrinkage, evaporation or loss of weight, unless directly resulting from other physical damage not excluded by this Policy.

**10.** Changes in color, flavor, texture or finish, unless directly resulting from other physical damage not excluded by this Policy.

# D. ADDITIONAL COVERAGES

The Additional Coverages below are subject to all the terms and conditions of this Policy including, but not limited to, the limits of liability, deductibles and exclusions shown in the Declarations section.

## 1. Accounts Receivable

This Policy covers amounts which the Insured is unable to collect as a direct result of insured physical loss or damage to accounts receivable records at a **location**.

Coverage includes:

**a)** Interest charges on any loan to offset impaired collections pending repayment of sums that cannot be collected. Unearned interest charges and service charges on deferred payment accounts and normal credit losses on bad debts will be deducted.

**b)** Collection expenses in excess of normal collection costs.

**c)** Other reasonable expenses incurred by the Insured in recreating records of accounts receivable.

After payment of loss by this Company, all amounts recovered by the Insured on accounts receivable for which the Insured has been indemnified will belong to and be paid to this Company by the Insured up to the total amount of loss paid by this Company. All recoveries in excess of such amounts will belong to the Insured.

Accounts Receivable Exclusions: As respects Accounts Receivable, the following additional exclusions apply:

This Policy does not cover shortage resulting from:

**a)** Bookkeeping, accounting, or billing error or omission.

**b)** Alteration, falsification, manipulation, concealment, destruction or disposal of records of accounts receivable committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property.


***© 2017 AFM. All rights reserved.***

## 2. Arson or Theft Reward

This Policy covers payment of any reward offered by the Insured or on the Insured's behalf for information that leads to conviction of the perpetrator(s) of insured:

**a)** Arson to; or

**b)** Theft of;

Insured property.

## 3. Brand Protection

This Policy gives control of physically damaged property consisting of finished goods or merchandise manufactured by or for the Insured as follows:

**a)** The Insured will have full rights to the possession and control of damaged property in the event of insured physical loss or damage to such property provided proper testing is done to show which property is physically damaged.

**b)** The Insured using reasonable judgment will decide if the physically damaged property can be reprocessed or sold.

Physically damaged property judged by the Insured to be:

**i)** Unfit for reprocessing or selling will not be sold or disposed of except by the Insured, or with the Insured's consent.

**ii)** Fit for reprocessing or selling and this Company elects to take all or any part of physically damaged branded and labeled property, the Insured may at this Company's expense:

(a) Stamp "salvage" on the property or its containers; or

(b) Remove or obliterate the brands or labels,

If doing so will not damage the property.

The Insured must relabel the property or containers in compliance with the applicable requirements of law.

**c)** Any salvage proceeds received will go to the:

**i)** Company at the time of loss settlement; or

**ii)** Insured if received prior to loss settlement and such proceeds will reduce the amount of loss payable accordingly.

## 4. Change of Temperature

This Policy covers spoilage of insured stock and supplies due to:

**a)** Changes of temperature or changes in relative humidity,

Directly resulting from the interruption, in whole or part, of services consisting of electricity, gas, fuel, steam, water or refrigeration by reason of any accidental event, other than insured physical loss or damage, at a **location**.


*© 2017 AFM. All rights reserved.*

AFM

Member of the FM Global Group

proVision

## 5. Communicable Disease – Property Damage

If a **described location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **described location** is limited, restricted or prohibited by:

**a)** An order of an authorized governmental agency regulating or as result of such presence of **communicable disease**; or

**b)** A decision of an Officer of the Insured as a result of such presence of **communicable disease**,

This Policy covers the reasonable and necessary costs incurred by the Insured at such **described location** for the:

**a)** Cleanup, removal and disposal of such presence of **communicable disease** from insured property; and

**b)** Actual costs or fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from such presence of **communicable disease** on insured property.

This Additional Coverage does not cover any costs incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to such presence of **communicable disease**.

This coverage is subject to the Qualifying Period in the Declarations section of this Policy.

Communicable Disease - Property Damage Exclusions: As respects Communicable Disease – Property Damage, the following additional exclusion applies:

This Policy excludes loss or damage directly or indirectly caused by or resulting from **terrorism** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

## 6. Data, Programs or Software

This Policy covers insured **physical loss or damage to electronic data, programs or software**, including physical loss or damage caused by the malicious introduction of a machine code or instruction, while anywhere within this Policy's Territory, including while in transit.

This coverage includes:

**a)** The cost of the following reasonable and necessary actions taken by the Insured due to actual insured **physical loss or damage to electronic data, programs or software:**

**i)** To temporarily protect and preserve insured electronic data, programs or software.

**ii)** For the temporary repair of insured **physical loss or damage to electronic data, programs or software**.

**iii)** To expedite the permanent repair or replacement of such damaged property.

**b)** The reasonable and necessary costs incurred by the Insured to temporarily protect or preserve insured electronic data, programs or software against immediately impending insured **physical loss or damage to electronic data, programs or software**. In the event that there is no physical loss or damage, the costs covered under this item will be subject to the deductible that would have applied had there been such physical loss or damage.

This coverage is subject to the Qualifying Period in the Declarations section of this Policy.

This Additional Coverage excludes loss or damage to data, programs or software when they are **stock in process**, finished goods manufactured by the Insured, **raw materials**, supplies or other merchandise not manufactured by the Insured.


***© 2017 AFM. All rights reserved.***

Data, Programs or Software Exclusions: As respects Data, Programs or Software, the following additional exclusion applies:

This Policy excludes the following but, if physical damage not excluded by this Policy results, then only that resulting damage is insured:

**a)** Errors or omissions in processing or copying.

**b)** Loss or damage to data, programs or software from errors or omissions in programming or machine instructions.

Data, Programs or Software Valuation: On property insured under this coverage, the loss amount will not exceed:

**a)** The cost to repair, replace or restore data, programs or software including the costs to recreate, research and engineer; or

**b)** The blank value of the media if not repaired, replaced or restored within two years from the date of loss.

## 7. Debris Removal

This Policy covers the reasonable and necessary costs incurred to remove debris from a **location** that remains as the direct result of insured physical loss or damage.

This coverage does not cover the costs of removing:

**a)** Contaminated uninsured property; or

**b)** The **contaminant** in or on uninsured property;

Whether or not the **contamination** results from insured physical loss or damage.

This coverage includes the costs of removal of contaminated insured property or the **contaminant** in or on insured property only if the **contamination**, due to the actual not suspected presence of **contaminant(s)**, of the debris resulted directly from other physical damage not excluded by the Policy.

## 8. Decontamination Costs

If insured property is contaminated as a direct result of insured physical damage and there is in force at the time of the loss any law or ordinance regulating **contamination** due to the actual not suspected presence of **contaminant(s)**, then this Policy covers, as a direct result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such contaminated insured property in a manner to satisfy such law or ordinance. This coverage applies only to that part of insured property so contaminated due to such presence of **contaminant(s)** as a direct result of insured physical damage.

The Company is not liable for the costs required for removing:

**a)** Contaminated uninsured property; or

**b)** The **contaminant** in or on uninsured property;

Whether or not the **contamination** results from insured physical loss or damage.


***© 2017 AFM. All rights reserved.***

## 9. Deferred Payment

This Policy covers the Insured's interest in personal property of the type insured that has been sold by the Insured under a conditional sale or trust agreement or any installment or deferred payment plan, if such property sustains physical loss or damage insured by this Policy and only to the extent the Insured is unable to collect the unpaid balance of such interest.

This coverage applies from the time the property is delivered to the buyer until the Insured's interest in it has ceased or the policy terminates or expires, whichever is first.

Deferred Payment Exclusion: As respects Deferred Payment, the following additional exclusion applies:

This Policy excludes:

**a)** Theft or conversion by the buyer of the property after the buyer has taken possession of such property.

**b)** Property not within this Policy's Territory.

Deferred Payment Valuation: On property insured under this coverage, the loss amount will not exceed the lesser of the following:

**a)** The total amount of unpaid installments less finance charges.

**b)** The **actual cash value** of the property on the date of loss or damage.

**c)** The cost to repair or replace with material of like size, kind and quality.

## 10. Demolition and Increased Cost of Construction

This Policy covers the costs as described herein resulting from the Insured's obligation to comply with a law or ordinance, provided that:

**a)** Such law or ordinance is enforced as a direct result of insured physical loss or damage at a **location**;

**b)** Such law or ordinance is in force at the time of such loss or damage; and

**c)** Such **location** was not required to be in compliance with such law or ordinance prior to the happening of the insured physical loss or damage.

Coverage A:

The reasonable and necessary costs incurred by the Insured to comply with the enforcement of the minimum requirements of any law or ordinance that Regulates the demolition, construction, repair, replacement or use of buildings, structures, machinery or equipment.

As respects insured property, this Coverage A covers the reasonable and necessary costs to:

**a)** Demolish any physically damaged and undamaged portions of the insured buildings, structures, machinery or equipment.

**b)** Repair or rebuild the physically damaged and undamaged portions, whether or not demolition is required, of such insured buildings, structures, machinery or equipment.


***© 2017 AFM. All rights reserved.***

The Company's maximum liability for this Coverage A at each location in any occurrence will not exceed the actual costs incurred in demolishing the physically damaged and undamaged portions of the insured property plus the lesser of:

**a)** The reasonable and necessary cost, excluding the cost of land, to rebuild on another site; or

**b)** The cost to rebuild on the same site.

Coverage B:

The reasonable estimated cost to repair, replace or rebuild insured property consisting of buildings, structures, machinery or equipment that the Insured is legally prohibited from repairing, replacing or rebuilding to the same height, floor area, number of units, configuration, occupancy or operating capacity, because of the enforcement of any law or ordinance that regulates the construction, repair, replacement or use of buildings, structures, machinery or equipment.

Demolition and Increased Cost of Construction Coverage B Valuation: On property covered under this Coverage B that cannot legally be repaired or replaced, the loss amount will be the difference between:

**a)** The **actual cash value**; and

**b)** The cost that would have been incurred to repair, replace or rebuild such lost or damaged property had such law or ordinance not been enforced at the time of loss.

Demolition and Increased Cost of Construction Exclusions: As respects Demolition and Increased Cost of Construction, the following additional exclusions apply:

This Policy does not cover:

**a)** Any cost incurred as a direct or indirect result of enforcement of any law or ordinance regulating any form of **contamination**.

**b)** Any machinery or equipment manufactured by or for the Insured, unless used by the Insured in its operation at the **location** suffering the physical loss or damage.

## 11. Earth Movement

This Policy covers physical loss or damage caused by or resulting from **earth movement**.

## 12. Errors and Omissions

If physical loss or damage is not payable under this Policy solely due to an error or unintentional omission:

**a)** In the address of a property insured by this Policy which existed at the inception date of this Policy or in any subsequent amendments to this Policy;

**b)** That fails to include any **location**:

- **i)** Owned; or
- **ii)** Occupied by the Insured; or

**c)** That results in cancellation of insured property under this Policy;

Then coverage applies to the extent this Policy would have provided coverage had the error or unintentional omission not been made.


***© 2017 AFM. All rights reserved.***

It is a condition of this Additional Coverage that any error or unintentional omission be reported by the Insured to the Company when discovered and corrected.

## 13. Expediting Expenses

This Policy covers the reasonable and necessary costs incurred to:

**a)** Temporarily repair or replace; and

**b)** Expedite the permanent repair or replacement of;

Insured property that has sustained insured physical loss or damage.

This coverage does not include expenses payable elsewhere in this Policy including the cost of permanent repair or replacement of damaged property.

## 14. Fine Arts and Valuable Papers and Records

This Policy covers **fine arts** and **valuable papers and records** while anywhere within this Policy's Territory including while in transit.

Fine Arts and Valuable Papers and Records Exclusion: As respects Fine Arts and Valuable Papers and Records, the following additional exclusion applies:

This Policy excludes:

**a)** Loss or damage to any **fine arts** as a result of restoring, repairing or retouching processes.

**b)** Errors or omissions in the processing or copying of **valuable papers and records.**

Fine Arts and Valuable Papers and Records Valuation: On property insured under this coverage, the loss amount will not exceed the lesser of the following:

**a)** The cost to repair or restore the article to the condition that existed immediately prior to the loss;

**b)** The cost to replace the article; or

**c)** The value designated for the article as shown in the Declarations section of this Policy or on a schedule on file with this Company.

In case of physical loss or damage to a **fine arts** or **valuable papers and records** article that is part of a pair or a set, this Company will pay the lesser of the full value or the amount scheduled, if any, of the value of such pair or set only if the damaged article cannot be repaired or restored to its condition before the loss and the Insured surrenders the remaining article or articles of the pair or set to this Company.

## 15. Flood

This Policy covers physical loss or damage caused by or resulting from **flood**.

## 16. Green Coverage

This Policy covers the reasonable and necessary additional costs incurred by the Insured, as a direct result of insured physical loss or damage:


***© 2017 AFM. All rights reserved.***

AFM
Member of the FM Global Group

proVision

**a)** To repair or replace physically damaged insured property with material of like kind and quality which qualifies as **Green**.

**b)** To replace the insured physically damaged portions of insured roofing systems with vegetative roof(s), including but not limited to the addition of trees, shrubs, plants and lawns to those roof(s), which qualify as **Green,** if this Policy covers Real Property.

**c)** As part of **Green** reconstruction, to flush out the air in the area of the physically damaged insured property with 100 percent outside air and to provide replacement filtration media for the building's ventilation system that controls the damaged area.

**d)** For an accredited professional certified by a **Green Authority** to participate in the design and construction for repairing or rebuilding the physically damaged insured property as **Green**.

**e)** For the process of certification or recertification of the repaired or replaced insured property as **Green.**

**f)** For **Green** removal, disposal or recycling of the damaged insured property.

Notwithstanding any other provision in this Policy, the Insured must repair or replace the insured real and/or personal property lost, damaged or destroyed as a condition of this coverage.

Green Coverage Exclusions: As respects Green Coverage, the following additional exclusions apply:

This Policy excludes:

**a)** Stock, **raw materials**, work in process, finished goods, merchandise, **production machinery and equipment**, electronic data processing equipment not used in the functional support of the real property, molds and dies, property in the open, property of others for which the insured is legally liable, personal property of directors, officers or employees of the Insured.

**b)** Any property adjusted on other than repair or replacement per the Valuation clauses of this Policy.

**c)** Any loss recoverable elsewhere in this Policy.

## 17. Land and Water Clean Up Expense

This Policy covers the reasonable and necessary costs to remove, dispose of or clean up the actual but not the suspected presence of **contaminant(s)** from uninsured land or water or any substance in or on land, at a **location**, when such property is contaminated as a direct result of insured physical loss or damage to insured property.

This Policy does not cover the cost to clean up, remove and dispose of **contamination** from such property:

**a)** At any **location** insured for Personal Property only.

**b)** When the Insured fails to give written notice of loss to this Company within 180 days after the inception of the loss.

## 18. Locks and Keys

This Policy covers the reasonable and necessary cost incurred by the Insured to replace undamaged keys and to replace, adjust or reprogram undamaged locks to accept new keys or entry codes as a result of insured physical loss or damage.


***© 2017 AFM. All rights reserved.***

AFM
Member of the FM Global Group

proVision

## 19. Money and Securities

This Policy covers physical loss or damage to money and securities at a **location** resulting from:

**a)** Fire, explosion or sprinkler leakage.

## 20. Newly Acquired Property

This Policy covers property of the type insured that is newly acquired while located anywhere within this Policy's Territory, excluding while in transit.

This coverage terminates:

**a)** When the newly acquired property is bound by this Company; or

**b)** When agreement is reached that the property will not be insured under this Policy; or

**c)** 120 days after the date of acquisition of the property; or

**d)** At the termination or expiration of this Policy;

Whichever occurs first.

## 21. Off-Premises Data Services - Property Damage

This Policy covers insured physical loss or damage to insured property at a **location** when such physical loss or damage results from the interruption of **off-premises data processing or data transmission services** by reason of any accidental event at the facilities of the provider of such services, while anywhere within this Policy's Territory, that immediately prevents in whole or in part the delivery of such provided services.
For the purposes of this Additional Coverage an accidental event to satellites will be considered an accidental event at the facilities of the provider.

This coverage is subject to the Qualifying Period in the Declarations section of this Policy.

Additional General Conditions:

1) The Insured will immediately notify the company providing **off-premises data processing or data transmission services** of any interruption of such services.

2) The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has entered into for such specified services.

Off Premises Data Services - Property Damage Exclusions: As respects Off-Premises Data Services - Property Damage , the following additional exclusion applies:

This Policy excludes loss or damage directly or indirectly caused by or resulting from t**errorism** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

## 22. Off-Premises Service Interruption - Property Damage

This Policy covers insured physical loss or damage at a **location** caused by or resulting from the interruption, in whole or part, of incoming electric, gas, fuel, steam, water, refrigeration, or outgoing sewerage.


***© 2017 AFM. All rights reserved.***

The interruption of such services must be by reason of an accidental event, not otherwise excluded by this Policy, at the facilities of the service provider(s) while anywhere within this Policy's Territory.

This coverage is subject to the Qualifying Period in the Declarations section of this Policy.

Additional Conditions:

This Company will not be liable for deliberate act(s) by the service provider to shed load to maintain system integrity.

Off-Premises Service Interruption - Property Damage Exclusion: As respects Off-Premises Service Interruption - Property Damage the following additional exclusions apply:

This Policy excludes loss or damage directly or indirectly caused by or resulting from **terrorism** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

## 23. Professional Fees

This Policy covers the reasonable and necessary expenses incurred by the Insured of:

**a)** Auditors;

**b)** Accountants;

**c)** Architects;

**d)** Engineers; or

**e)** Other professionals; and

**f)** The Insured's own employees,

For producing and certifying particulars or details to determine the amount of loss payable under this Policy for which this Company has accepted liability.

This coverage does not include the fees and expenses of attorneys, public adjusters, loss appraisers, loss consultants or any of their subsidiaries or related or associated entities.

## 24. Property Removed from a Location

This Policy covers insured property when removed from a **location** to avoid or prevent immediately impending insured physical loss or damage to such property. This Policy covers such property for physical loss or damage as provided at the **location** from which the property was removed.

This coverage applies for a period:

**a)** Of 120 days from the date of removal; but

**b)** Not beyond the termination or expiration date of this Policy.

## 25. Protection and Preservation of Property - Property Damage

This Policy covers the reasonable and necessary costs incurred for:


***© 2017 AFM. All rights reserved.***

**a)** Actions to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property.

**b)** Fire department firefighting charges imposed as a result of responding to a fire in, on or exposing the insured property.

**c)** Restoring and recharging fire protection systems following an insured loss.

**d)** The water used for fighting a fire in, on or exposing the insured property.

**e)** Temporary security for a period of time not to exceed 30 consecutive days due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property.

This coverage does not cover costs incurred for actions to temporarily protect or preserve insured property from actual, or to prevent immediately impending, physical loss or damage covered by the Terrorism coverage of this Policy.

This coverage is subject to the deductible provisions that would have applied had the physical loss or damage happened.

## 26. Tax Treatment

This Policy covers the increased tax liability as a direct result of insured physical loss or damage to insured property. When such tax liability is greater than the tax liability that would have been incurred had there been no such loss or damage, then this Policy will cover only the increased tax liability for the profit portion of a loss payment under this Policy involving finished stock manufactured by the Insured and/or the profit portion of the Business Interruption loss payment.

## 27. Tenants Legal Liability

This Policy covers direct physical loss or damage, caused by or resulting from **named perils**, to that part of buildings of others, including permanently attached building fixtures, leased to and occupied by the Insured at a **described location** to the extent of the Insured’s legal liability for such loss or damage.

This coverage also includes the following:

**a)** The reasonable expenses of defending the Insured against only that part of any suit alleging the Insured’s legal liability for such physical loss or damage;

**b)** The reasonable expenses incurred by this Company, this Company’s proportionate share of costs taxed against the Insured in any such suit, and this Company’s proportionate share of interest accruing after entry of judgment until this Company has paid, tendered or deposited into court its proportionate share of such judgment; and

**c)** The reasonable expenses, other than loss of earnings, incurred at this Company’s request.

This coverage does not include:

**a)** That part of any settlement by the Insured to which this Company has not given its prior written consent; or

**b)** Any legal liability for loss or damage assumed by the Insured under any contract or agreement, whether oral or written, expressed or implied.

Additional Provisions: This Company may:

**a)** Investigate, negotiate and settle any claim or suit as this Company deems expedient and will not be prejudiced under this coverage for failure to settle for any amount within the Company’s applicable limit of liability.


***© 2017 AFM. All rights reserved.***

**b)** Pay, tender or deposit into court the Company's applicable limit of liability, less any expenses incurred by the Company, in full satisfaction of its liability under this coverage, and thereby terminate any further liability for any expense amount described in paragraphs a, b or c above.

Tenants Legal Liability Exclusion: As respects Tenants Legal Liability, the following additional exclusions apply:

This Policy excludes loss or damage directly or indirectly caused by or resulting from **terrorism** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

## 28. Terrorism

This Policy covers physical loss or damage caused by or resulting from **terrorism** only at a **described location**.

Any act which satisfies the definition of **terrorism** shall not be considered to be vandalism, malicious mischief, riot, civil commotion or any other risk of physical loss or damage covered elsewhere in this Policy.

Amounts recoverable under this coverage are excluded from coverage elsewhere in this Policy.

This coverage does not cover loss or damage which also comes within the terms of either Group I Item 2a or Group I Item 2c of the Exclusions clause of this Policy.

This coverage does not in any event cover loss or damage directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event, whether or not insured under this Policy contributing concurrently or in any other sequence to the loss:

**a)** That involves the use, release or escape of nuclear materials or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination or that involves the discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act; or

**b)** That is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**c)** In which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

**d)** That involves action taken to prevent, defend against, respond to or retaliate against **terrorism** or suspected **terrorism**.

## 29. Transit

This Policy covers the following insured personal property:

**a)** Owned by the Insured;

**b)** Of others to the extent of the Insured's interest or legal liability while in the actual or constructive custody of the Insured;

**c)** Shipped to others on Free on Board (FOB), Cost and Freight (C&F) or similar terms. The Insured's contingent interest in such shipments is admitted,

**d)** Of others sold by the Insured, that the Insured has agreed prior to the loss to insure during course of delivery including:


***© 2017 AFM. All rights reserved.***

**i)** When shipped by the Insured's direct contract service provider or by the Insured's direct contract manufacturer to the Insured or to the Insured's customer;

**ii)** When shipped by the Insured's customer to the Insured or to the Insured's contract service provider or to the Insured's contract manufacturer,

While in transit within the Policy's Territory:

**a)** From the time the property leaves the original point of shipment for transit; and

**b)** Continuously in the due course of transit until delivered at the destination.

**c)** Coverage on export shipments not insured under ocean cargo policies does not extend beyond the time when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies does not attach until after discharge from overseas vessels or aircraft.

This coverage:

**a)** Insures physical loss or damage caused by or resulting from:

**i)** Unintentional acceptance of fraudulent bills of lading, shipping or messenger receipts by the Insured or the Insured's agent, customer or consignee.

**ii)** Any unauthorized person(s) representing themselves to be the proper party(ies) to receive the property for shipment or to accept it for delivery.

**b)** Covers general average and salvage charges on shipments covered while waterborne.

Additional Conditions:

**a)** Permission is granted to the Insured, without prejudice to this insurance, to accept ordinary bills of lading used by carriers, including:

**i)** Released and/or undervalued bills of lading; or

**ii)** Shipping or messenger receipts.

**b)** The Insured may waive subrogation against railroads under sidetrack agreements.

**c)** The Insured may not enter into any special agreement with carriers releasing them from their common law or statutory liability.

**d)** This coverage shall not inure directly or indirectly to the benefit of any carrier or bailee.

Transit Exclusions: As respects Transit, the following additional exclusions apply:

This Policy excludes:

**a)** Property shipped by mail.

**b)** Shipments by air unless made by regularly scheduled airlines.

**c)** Waterborne shipments via the Panama Canal or waterborne shipments to and from:

**i)** Alaska.


***© 2017 AFM. All rights reserved.***

**ii)** Hawaii.

**iii)** Commonwealth of Puerto Rico.

**iv)** Virgin Islands.

**d)** Any transporting vehicle.

**e)** Property of others, including the Insured's legal liability, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

**f)** Property insured under any import or export ocean marine insurance.

Transit Valuation: On property insured under this coverage, the loss amount will not exceed the following:

**a)** For property shipped to or for the account of the Insured: the actual invoice to the Insured, including such costs and charges (including the commission of the Insured as selling agent) as may have accrued and become legally due on such property.

**b)** For property that has been sold by the Insured and shipped to or for the account of the purchaser (if covered by this Policy), the amount of the Insured's selling invoice, including prepaid or advanced freight.

**c)** For property not under invoice:

**i)** For property of the Insured, at the valuation provisions of the Policy applying at the place from which the property is being transported; or

**ii)** For other property, the **actual cash value** at point of destination on the date of loss,

Less any charges saved which would have become due and payable upon arrival at destination.

## 30. Unnamed Property

This Policy covers insured property anywhere within this Policy's Territory, excluding property while in transit.

Unnamed Property Exclusion: As respects Unnamed Property, the following additional exclusion applies:

This Policy excludes:

**a)** **Transmission and distribution systems**, except at a premises owned, leased or rented by the Insured**.**


***© 2017 AFM. All rights reserved.***

Member of the FM Global Group

# BUSINESS INTERRUPTION

The Business Interruption loss, as provided in the Business Interruption Coverage and Business Interruption Coverage Extensions of this section, is subject to all the terms and conditions of this Policy including, but not limited to, the limits of liability, deductibles and exclusions shown in the Declarations section.

## A. LOSS INSURED

This Policy insures Business Interruption loss, as provided in the Business Interruption Coverage, as a direct result of physical loss or damage of the type insured:

**1.** To property as described elsewhere in this Policy and not otherwise excluded by this Policy;

**2.** Used by the Insured;

**3.** While at a **location** or while in transit as provided by this Policy; and

**4.** During the Period of Liability as described elsewhere in this Policy.

This Policy insures Business Interruption loss only to the extent it cannot be reduced through:

**1.** The use of any property or service owned or controlled by the Insured;

**2.** The use of any property or service obtainable from other sources;

**3.** Working extra time or overtime; or

**4.** The use of inventory;

All whether at a **location** or at any other premises. This Company reserves the right to take into consideration the combined operating results of all associated, affiliated or subsidiary companies of the Insured in determining the amount of loss.

In determining the amount of loss payable, this Company will consider:

**1.** Any amount recovered elsewhere under this Policy for loss or damage to finished goods or merchandise at selling price as having been sold to the Insured's regular customers and credited against net sales.

**2.** The experience of the business before and after and the probable experience during the Period of Liability. The probable experience will also consider any increase or decrease in demand for the Insured's goods or services during the Period of Liability, even if such increase or decrease is from the same event that caused physical loss or damage starting the Period of Liability.

**3.** The continuation of only those normal charges and expenses that would have been earned had there been no interruption of production or business operations or services.

This Policy also covers expenses reasonably and necessarily incurred by the Insured to reduce the loss otherwise payable under this Policy. The amount of such recoverable expenses will not exceed the amount by which the loss is reduced.


***© 2017 AFM. All rights reserved.***

## B. BUSINESS INTERRUPTION COVERAGE

### 1. Gross Earnings

The recoverable Gross Earnings loss is the actual loss sustained by the Insured of **Gross Earnings**, less all charges and expenses that do not necessarily continue, plus all other earnings derived from the operations of the business, excluding loss covered under Rental Income, during the Period of Liability.

**Gross Earnings** means:

The net sales value of production or business operations or services less the cost of:

**a)** Raw stock;

**b)** Materials and supplies; and

**c)** Merchandise sold;

Used in production or business operations or services rendered by the Insured

The recoverable Gross Earnings loss payable is limited to the extent the Insured is:

**a)** Wholly or partially prevented from producing goods or continuing business operations or services;

**b)** Unable to make up lost production within a reasonable amount of time, not limited to the period during which production is interrupted;

**c)** Unable to continue such operations or services during the Period of Liability; and

**d)** Able to demonstrate a loss of sales for the production or business operations or services prevented.

### 2. Gross Profits

The recoverable Gross Profits loss is the actual loss sustained by the Insured of the:

**a)** **Reduction in Sales;** and the

**b)** **Increased Cost of Doing Business,**

Resulting from the necessary interruption of business during the Period of Liability.

As respects Gross Profits, Business Interruption Exclusion Items 2a, 2c and 3 do not apply.

For purposes of measuring the loss:

**Gross Profits** means:

The sum produced by adding the **Net Profit** to the **Insured Fixed Charges**. If there is no **Net Profit** the amount of all **Insured Fixed Charges** less that proportion of any loss from business operations as the amount of the **Insured Fixed Charges** bears to all fixed charges.

**Increased Cost of Doing Business** means:


***© 2017 AFM. All rights reserved.***

The reasonable and necessary costs incurred to avoid or diminish a reduction in sales but not to exceed the sum produced by applying the **Rate of Gross Profit** to the amount of the reduction avoided; all less any sums saved as may cease or be reduced during the Period of Liability.

**Insured Fixed Charges** means:

All fixed charges unless specifically excluded in the Declarations section.

**Net Profit** means:

The net operating profit excluding:

**a)** Capital receipts and accruals; and

**b)** Outlay properly chargeable to capital;

Resulting from the business of the Insured after due provision has been made for all fixed charges and any other expenses, including depreciation, but before deduction of any taxes on profits.

**Rate of Gross Profit** means:

The rate of **Gross Profit** earned on **Sales** during the twelve (12) full months immediately before the date of the loss or damage to the insured property.

**Reduction in Sales** means:

The amount produced by applying the **Rate of Gross Profit** to the amount by which the **Sales** during the Period of Liability fall short of the **Standard Sales**.

**Sales** means:

The money, excluding loss covered under Rental Income, paid or payable to the Insured for:

**a)** Goods sold and delivered; and

**b)** Services rendered;

In the conduct of the Insured's business**.**

**Standard Sales** means:

The **Sales** during the period of the twelve (12) months immediately before the date of the loss or damage to the insured property which corresponds with the Period of Liability.

## 3. Rental Income

The recoverable Rental Income loss is the actual loss sustained by the Insured of the following during the Period of Liability:

**a)** The fair rental value of any portion of the property occupied by the Insured;

**b)** Income reasonably expected from the rentals of unoccupied or unrented portions of such property;

**c)** The rental income from the rented portions of such property, according to bona fide leases, contracts or agreements, in force at the time of loss;


***© 2017 AFM. All rights reserved.***

All less charges and expenses that do not continue.

Rental Income Exclusion: As respects Rental Income, the following additional exclusion applies:

This Policy does not insure:

**a)** Any loss of rental income during any period in which the insured property would not have been rented for any reason other than an insured loss.

## 4. Extra Expense

The recoverable Extra Expense loss is the reasonable and necessary extra expense incurred by the Insured of the following during the Period of Liability to:

**a)** Temporarily continue as close to normal the conduct of the Insured's business; and

**b)** Temporarily use the property or facilities of the Insured or others;

All less any value remaining at the end of the Period of Liability for property obtained in connection with the above.

If the Insured makes claim in accordance with the terms and conditions of the BI Select clause, the Period of Liability for Extra Expense coverage will be the Period of Liability applicable to the Business Interruption Coverage option selected.

Extra Expense Exclusions: As respects Extra Expense, the following additional exclusions apply:

This Policy does not insure:

**a)** Any loss of income.

**b)** Expenses that usually would have been incurred in conducting the business during the same period had no physical loss or damage happened.

**c)** The cost of permanent repair or replacement of property that has been damaged or destroyed.

**d)** Any expense recoverable elsewhere in this Policy.

## 5. BI Select™

If this Policy insures Gross Earnings and Gross Profit the Insured has the option to make claim based on either:

**a)** Gross Earnings; or

**b)** Gross Profit.

If such claim involves more than one **location**, including interdependency at one or more **locations**, all such claims will be adjusted using the coverage option chosen above.

This option may be exercised any time prior to meeting the conditions set forth in the Settlement of Claims provisions in the Loss Adjustment and Settlement section of this Policy.


***© 2017 AFM. All rights reserved.***

## C. PERIOD OF LIABILITY

The Period of Liability for Business Interruption Coverage and Business Interruption Coverage Extensions, unless otherwise stated elsewhere in this Policy, is as follows:

The Gross Earnings, Rental Income or Extra Expense Period of Liability is:

**1.** The period starting from the time of physical loss or damage of the type insured; and

**2.** Ending when, with due diligence and dispatch,

  **a)** The lost or damaged property could be repaired or replaced and made ready for production or business operations or services under the same or equivalent physical operating conditions that existed prior to the loss or damage; or

  **b)** The lost or damaged property under the course of construction or renovation could be repaired or replaced to the same or equivalent degree of completion that existed prior to the loss or damage. This period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened.

**3.** For **raw materials** or supplies, the period of time:

  **a)** Resulting from the inability to procure suitable **raw materials** or supplies to replace those physically lost or damaged, but

  **b)** For no more than the period of time for which such physically lost or damaged **raw materials** or supplies would have supplied production or business operating or servicing needs.

The Gross Profit Period of Liability is:

The period starting from the time of physical loss or damage of the type insured and ending no later than the period of time shown in the Declarations section during which the results of the business shall be directly affected by such damage.

Period of Liability Conditions:

The Period of Liability will not include any additional time:

**1.** Due to the Insured's inability to resume production or business operations or services regardless of the reason, including but not limited to:

  **a)** Making change(s) to the buildings, structures or equipment, for any reason except as provided by the Demolition and Increased Cost of Construction coverage in this Policy; or

  **b)** Restaffing or retraining employees. However, this item does not apply to additional time needed to train staff to use new machinery or equipment which replaces machinery or equipment that suffered insured physical loss or damage, provided that such training is completed within 90 days after the new machinery or equipment has been installed.

If two or more Periods of Liability apply such periods will not be cumulative and will not be limited by the expiration of this Policy.

## D. BUSINESS INTERRUPTION EXCLUSIONS

In addition to the exclusions elsewhere in this Policy, the following exclusions apply to Business Interruption loss:

This Policy does not insure:


***© 2017 AFM. All rights reserved.***

AFM
Member of the FM Global Group

proVision

1. Any loss during any idle period, including but not limited to when production, operations or services or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

   **a)** Physical loss or damage not insured by this Policy.

   **b)** Planned or rescheduled shutdown.

   **c)** Strike or other work stoppage.

   **d)** Any other reason other than physical loss or damage insured under this Policy.

2. Any increase in loss due to:

   **a)** The suspension, cancellation, or lapse of any lease, contract, license or order.

   **b)** Damages for breach of contract, or for late or non-completion of orders.

   **c)** Fines or penalties of any nature, except as provided by the Contractual Penalties coverage in this Policy.

   **d)** Any other consequential or remote loss.

3. Any loss resulting from physical loss or damage to merchandise or finished goods valued at the regular cash selling price or the time required for their reproduction.

4. Any loss resulting from the actual cash value portion of direct physical loss or damage by fire caused by or resulting from terrorism.

# E. BUSINESS INTERRUPTION COVERAGE EXTENSIONS

## 1. Attraction Property

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability directly resulting from physical loss or damage of the type insured to property of the type insured that attracts business to a **described location** and is within one (1) statute mile of the **described location**.

Attraction Property Exclusion: As respects Attraction Property, the following additional exclusion applies:

This Policy does not insure loss resulting from:

**a)** Physical loss or damage caused by or resulting from **terrorism,** regardless of any other cause or event, whether or not insured by this Policy, contributing concurrently or in any other sequence to loss.

## 2. Civil or Military Authority

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability if an order of civil or military authority prohibits access to a **location** provided such order is the direct result of physical damage of the type insured at a **location** or within five (5) statute miles of it.

Item B. 3. of Property Excluded does not apply to this Business Interruption Coverage Extension.

The Period of Liability for this Business Interruption Coverage Extension will be:


***© 2017 AFM. All rights reserved.***

**a)** The period of time starting at the time of such order of civil or military authority, but not to exceed the number of consecutive days shown in the Declarations section of this Policy.

### 3. Communicable Disease - Business Interruption

If a **described location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **described location** is limited, restricted or prohibited by:

**a)** An order of an authorized governmental agency regulating such presence of **communicable disease**; or

**b)** A decision of an Officer of the Insured as a result of such presence of **communicable disease**,

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability at such **described location** with such presence of **communicable disease**.

This coverage is subject to the Qualifying Period in the Declarations section of this Policy.

Communicable Disease - Business Interruption Exclusions: As respects Communicable Disease - Business Interruption, the following additional exclusions apply:

This Policy does not insure loss resulting from:

**a)** The enforcement of any law or ordinance with which the Insured was legally obligated to comply prior to the time of the actual spread of **communicable disease**.

**b)** Loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any sequence of loss.

The Period of Liability for this Business Interruption Coverage Extension will be:

The period of time:

**a)** Starting at the time of the order of the authorized governmental agency or the Officer of the Insured; but

**b)** Not to exceed the time limit shown in the Limits of Liability clause in the Declarations section,

This period of time is part of and not in addition to any Period of Liability applying to any coverage provided in the Business Interruption section.

### 4. Computer Systems Non-Physical Damage

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability directly resulting from:

**a)** The failure of the Insured's **electronic data processing equipment or media** to operate provided that such failure is the direct result of a malicious act directed at the Named Insured; or

**b)** The Insured's reasonable action to temporarily protect the Insured's **electronic data processing equipment or media** against an actual or immediately impending malicious act directed at the Named Insured, provided such action is necessary to prevent failure of the Insured's **electronic data processing equipment or media** to operate.

While anywhere within this Policy's Territory.

This coverage is subject to the Qualifying Period in the Declarations section of this Policy.


***© 2017 AFM. All rights reserved.***

The Period of Liability for this Business Interruption Coverage Extension will be:

**a)** The period of time starting when the Insured's **electronic data processing equipment or media** fails to operate and ending when, with due diligence and dispatch, the Insured's **electronic data processing equipment or media** could be restored to the same or equivalent operating condition that existed prior to the failure; and

**b)** Does not include the additional time to make changes to the Insured's **electronic data processing equipment or media**.

## 5. Contractual Penalties

This Policy covers contractual penalties incurred by the Insured during the Period of Liability due to late or non-completion of orders as a direct result of insured physical loss or damage to property of the type insured**.**

This extension of coverage applies provided that such contractual penalties:

**a)** Are written in the provisions of a contract prior to the time of such direct physical loss or damage, and

**b)** Will be limited to the contractual sales value of such late or non-completed orders.

## 6. Crisis Management

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability if an order of civil or military authority prohibits access to a **described location,** provided such order is a direct result of:

**a)** A violent crime, suicide, attempted suicide or armed robbery; or

**b)** A death or bodily injury caused by a **workplace accident**;

At that **described location.**

For the purpose of this Business Interruption Coverage Extension only, a violent crime, suicide, attempted suicide or armed robbery at a **described location** will be considered direct physical loss or damage insured by this Policy.

Crisis Management Exclusion: As respects Crisis Management, the following additional exclusion applies:

This Policy does not insure loss resulting from:

**a)** Physical loss or damage caused by or resulting from **terrorism,** regardless of any other cause or event, whether or not insured by this Policy, contributing concurrently or in any other sequence to the loss.

The Period of Liability for this Business Interruption Coverage Extension will be:

**a)** The period of time starting at the time of such order of civil or military authority, but not to exceed the number of consecutive days shown in the Declarations section of this Policy.

## 7. Extended Period of Liability

The Gross Earnings and Rental Income coverage is extended to cover the reduction in sales resulting from:

**a)** The interruption of business as covered by Gross Earnings or Rental Income;

**b)** For such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss happened; and


***© 2017 AFM. All rights reserved.***

**c)** Commencing with the date on which the liability of the Company for loss resulting from interruption of business would terminate if this Business Interruption Coverage Extension had not been included in this Policy.

However, this Business Interruption Coverage Extension does not apply to Gross Earnings or Rental Income loss resulting from physical loss or damage caused by or resulting from **terrorism**.

As respects Extended Period of Liability, Business Interruption Exclusion Item 2a does not apply.

Coverage under this Business Interruption Coverage Extension for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the extended period of liability.

Coverage under this Business Interruption Coverage Extension does not apply for more than the number of consecutive days shown in the Limits of Liability clause of the Declarations section of this Policy.

## 8. Ingress/Egress

This Policy covers the Business Interruption Coverage loss incurred by the Insured due to the necessary interruption of the Insured's business when ingress to or egress from a **described location(s)** is physically prevented, either partially or totally, as a direct result of physical loss or damage of the type insured to property of the type insured whether or not at a **described location**.

Item B. 3. of Property Excluded does not apply to this Business Interruption Coverage Extension.

Ingress/Egress Exclusion: As respects Ingress/Egress, the following additional exclusion applies:

This Policy does not insure loss resulting from:

**a)** Physical loss or damage caused by or resulting from **terrorism,** regardless of any other cause or event, whether or not insured by this Policy, contributing concurrently or in any other sequence to the loss.

## 9. Leasehold Interest

This Policy covers the loss incurred by the Insured of Leasehold Interest as follows:

If the lease agreement requires continuation of rent; and if the property is wholly untenantable or unusable, the actual rent payable for the unexpired term of the lease; or if the property is partially untenantable or unusable, the proportion of the rent payable for the unexpired term of the lease.

If the lease is cancelled by the lessor pursuant to the lease agreement or by the operation of law; the **Lease Interest** for the first three months following the loss; and the **Net Lease Interest** for the remaining unexpired term of the lease.
Leasehold Interests Exclusions: As respects Leasehold Interest, the following applies:

**a)** Business Interruption Exclusions 1, 2 and 3 do not apply and the following applies instead:

This Policy does not insure any increase in loss resulting from the suspension, lapse or cancellation of any license, or from the Insured exercising an option to cancel the lease; or from any act or omission of the Insured that constitutes a default under the lease.

**b)** This Policy does not insure loss directly resulting from physical loss or damage to Personal Property.

As used above, the following terms mean:

**Net Lease Interest:**


***© 2017 AFM. All rights reserved.***

That sum which placed at 6 percent interest rate compounded annually would equal the Lease Interest (less any amounts otherwise payable hereunder).

**Lease Interest:**

The excess rent paid for the same or similar replacement property over actual rent payable plus cash bonuses or advance rent paid (including maintenance or operating charges) for each month during the unexpired term of the Insured's lease.

## 10. Logistics Extra Cost

This Policy covers the extra cost incurred by the Insured during the Period of Liability due to disruption of the normal movement of goods or materials:

**a)** Directly between **described locations**; or

**b)** Directly between a **location** and the premises of a direct supplier, direct customer or direct contract service provider to the Insured;

Provided that such disruption is a direct result of physical loss or damage of the type insured to property of the type insured within the Policy's Territory.

Item B. 3. of Property Excluded does not apply to this Business Interruption Coverage Extension.

The recoverable extra cost loss will be the reasonable and necessary extra costs incurred by the Insured of the following:

**a)** Extra costs to temporarily continue as close to normal the movement of goods or materials.

Logistics Extra Cost Exclusions: As respects Logistics Extra Cost, the following shall apply:

This Policy does not insure any loss resulting from:

**a)** Disruption of incoming or outgoing services consisting of electricity, gas, fuel, steam, water, refrigeration, sewerage and voice, data or video.

**b)** Disruption caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

**c)** Disruption caused by physical loss or damage to personal property of the Insured while in transit.

**d)** Disruption in the movement of goods or materials between the premises of a supplier, customer or contract service provider to the Insured and the premises of another supplier, customer or contract service provider to the Insured.

**e)** Costs that usually would have been incurred in conducting the business during the same period had there been no disruption of normal movement of goods or materials; or

**f)** Loss of income

**g)** Costs of permanent repair or replacement of property that has been damaged or destroyed.

The Period of Liability for this Business Interruption Coverage Extension will be:

The period of time:

**a)** Starting at the time of physical loss or damage causing the disruption of the normal movement of goods or materials; and


*© 2017 AFM. All rights reserved.*

**b)** Ending not later than when with due diligence and dispatch the normal movement of goods or materials could be resumed.

## 11. Off-Premises Data Services - Business Interruption

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability at a **location** of **off-premises data processing or data transmission services**, when the interruption is caused by any accidental event at the facilities of the provider of such services, while anywhere within this Policy's Territory, that immediately prevents in whole or in part the delivery of such provided services. For the purposes of this Additional Coverage an accidental event to satellites will be considered an accidental event at the facilities of the provider.

This coverage is subject to the Qualifying Period in the Declarations section of this Policy.

Additional General Conditions:

**a)** The Insured will immediately notify the company providing **off-premises data processing or data transmission services** of any interruption of such services.

**b)** The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has entered into for such specified services.

Coverage provided in this Extension is excluded from coverage elsewhere in this Policy.

This Extension does not cover the Business Interruption Coverage loss incurred by the Insured covered by Computer Systems Non-Physical Damage coverage as provided in this section of this Policy.

Off-Premises Data Services - Business Interruption Exclusions: As respects Off- Premises Data Services - Business Interruption, the following additional exclusions apply:

This Policy excludes loss or damage directly or indirectly caused by or resulting from **terrorism** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

As used above, Period of Liability of **off-premises data processing or data transmission services**:

**a)** Is the period starting with the time when an interruption of provided services happens; and ending when with due diligence and dispatch the service could be wholly restored and the **location** receiving the service could or would have resumed normal operations following the restorations of service under the same or equivalent physical and operating conditions as provided by the Period of Liability clause in this section.

**b)** Is limited to only those hours during which the Insured would or could have used service(s) if it had been available.

**c)** Does not extend to include the interruption of operations caused by any reason other than interruption of the provided service(s).

## 12. Off-Premises Service Interruption - Business Interruption

This Policy covers Business Interruption Coverage loss incurred by the Insured during the Period of Liability caused by the interruption, in whole or part, of incoming electric, gas, fuel, steam, water, refrigeration, and outgoing sewerage services at a **location**.

The interruption of such services must be by reason of any accidental event, not otherwise excluded by this Policy, at the facilities of the service provider(s) while anywhere within this Policy's Territory.


***© 2017 AFM. All rights reserved.***

This coverage is subject to the Qualifying Period in the Declarations section of this Policy.

Additional Conditions:

This Company will not be liable for deliberate act(s) by the supplying utility to shed load to maintain system integrity.

Off-Premises Service Interruption - Business Interruption Exclusion: As respects Off-Premises Service Interruption - Business Interruption the following additional exclusions apply:

This Policy excludes loss or damage directly or indirectly caused by or resulting from **terrorism** regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.

The Period of Liability for this Business Interruption Coverage Extension will be:

**a)** The period starting with the time when an interruption of specified services happens; and

**b)** Ending when with due diligence and dispatch the service could be wholly restored and the **location** receiving the service could or would have resumed normal operations under the same or equivalent physical and operating conditions. Resultant and concurrent interruptions are considered as one event.

## 13. Protection and Preservation of Property - Business Interruption

This Policy covers the Business Interruption Coverage loss incurred by the Insured for a period of time not to exceed 48 hours prior to and 48 hours after the Insured first taking reasonable action for the temporary protection and preservation of property insured by this Policy provided such action is necessary to prevent immediately impending insured physical loss or damage to such insured property.

This Business Interruption Coverage Extension does not cover loss sustained by the Insured to temporarily protect or preserve insured property from actual, or to prevent immediately impending, physical loss or damage covered by Terrorism coverage as provided in this Policy.

This Business Interruption Coverage Extension is subject to the deductible provisions that would have applied had the physical loss or damage happened.

## 14. Research and Development

Gross Earnings and Gross Profits coverages are extended to cover the actual loss sustained by the Insured of continuing fixed charges and **ordinary payroll** directly attributable to the interruption of research and development activities that in themselves would not have produced income during the Period of Liability.

The Period of Liability for this Business Interruption Coverage Extension will be:

The period of time:

**a)** Starting at the time of physical loss or damage of the type insured; and

**b)** Ending when the property could be repaired or replaced and made ready for operations.

## 15. Soft Costs

This Policy covers **soft costs** incurred by the Insured during the Period of Liability arising out of the delay in the completion of buildings and additions under construction directly resulting from physical loss or damage of the type insured to insured property under construction at **locations**.


***© 2017 AFM. All rights reserved.***

## 16. Supply Chain

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability directly resulting from physical loss or damage of the type insured to property of the type insured at the premises of any of the following within the Policy's Territory:

**a)** Direct suppliers, direct customers or direct contract service providers to the Insured;

**b)** Any company under any royalty, licensing fee or commission agreement with the Insured; or

**c)** Any company that is a direct or indirect supplier, customer or contract service provider of those described in a above,

But not at the premises of entities directly or indirectly supplying to or receiving from a **location** electricity, fuel, water, steam, refrigeration, sewerage, voice, data or video.

Business Interruption Coverage loss recoverable under this Business Interruption Coverage Extension is extended to include the following Business Interruption Coverage Extensions:

**a)** Civil or Military Authority

**b)** Crisis Management

**c)** Extended Period of Liability

**d)** Ingress/Egress

**e)** Off-Premises Service Interruption - Business Interruption

**f)** Supply Chain

Supply Chain Exclusions: As respects Supply Chain coverage, the following additional exclusion applies:

This Policy does not insure loss resulting from:

**a)** Physical loss or damage caused by or resulting from **terrorism,** regardless of any other cause or event, whether or not insured by this Policy, contributing concurrently or in any other sequence to the loss.


***© 2017 AFM. All rights reserved.***

Member of the FM Global Group

# LOSS ADJUSTMENT AND SETTLEMENT

## A. ABANDONMENT

There shall be no abandonment to this Company of any property.

## B. APPRAISAL

If the Insured and this Company fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

**1.** The Insured has fully complied with all provisions of this Policy.

**2.** This Company has received a signed and sworn Proof of Loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. If the appraisers fail to agree upon an umpire within 30 days then, on the request of the Insured or this Company, the umpire will be selected by a judge of a court of record in the jurisdiction in which the appraisal is pending. The appraisers will then appraise the amount of loss, stating separately the **actual cash value** and replacement cost value as of the date of loss and the amount of loss, for each item of physical loss or damage or if, for Business Interruption loss, the amount of loss for each Business Interruption coverage of this Policy.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two will determine the amount of loss.

The Insured and this Company will each:

**1.** Pay its chosen appraiser; and

**2.** Bear equally the other expenses of the appraisal and umpire.

A demand for Appraisal shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy, including as provided under Requirements in Case of Loss.

This Company will not be held to have waived any of its rights by any act relating to appraisal.

## C. COLLECTION FROM OTHERS

This Company will not be liable for any loss to the extent that the Insured has collected for such loss from others.

## D. COMPANY OPTION

This Company has the option to take all or any part of damaged property at the agreed or appraised value. This Company must give notice to the Insured of its intention to do so within 30 days after receipt of Proof of Loss.

## E. CURRENCY FOR LOSS PAYMENT

Losses will be adjusted and paid in the currency of the United States of America, except in Canada where losses will be paid in Canadian currency, unless directed otherwise by the First Named Insured.


***© 2017 AFM. All rights reserved.***

AFM
Member of the FM Global Group

proVision

## F. LEGAL ACTION AGAINST THIS COMPANY

No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless:

**1.** The Insured has fully complied with all the provisions of this Policy; and

**2.** Legal action is started within two years after inception of the loss.

If under the insurance laws of the jurisdiction in which the property is located, such two-year limitation is invalid, then any such legal action must be started within the shortest limit of time permitted by such laws.

## G. LOSS ADJUSTMENT AND PAYABLE

Loss or damage will be adjusted with the First Named Insured and payable to or as the First Named Insured directs subject to the Mortgagee/Lenders Loss Payable clause in the General Conditions section of this Policy.

Additional insured interests will also be included in loss payment as their interests may appear when named as additional named insured, lender, mortgagee and/or loss payee on a Certificate of Insurance issued by this Company prior to the loss.

When named on a Certificate of Insurance issued by the Insured's broker with this Company's permission, such additional interests are added to this Policy as their interests may appear when such Certificate of Insurance is issued prior to the loss and on file with this Company. The effective date of any such interest will be the issue date of the certificate unless a later date is specified on the Certificate of Insurance. The Certificate of Insurance will not amend, extend or alter the terms, conditions, provisions and limits of this Policy.

## H. OTHER INSURANCE

**1.** If there is any other insurance that would apply in the absence of this Policy, this Policy will apply only after such insurance whether collectible or not.

**2.** In no event will this Policy apply as contributing insurance.

**3.** The Insured is permitted to have other insurance over any limits or sublimits of liability specified elsewhere in this Policy without prejudice to this Policy. The existence of any such insurance will not reduce any limit or sublimit of liability in this Policy. Any other insurance that would have provided primary coverage in the absence of this Policy will not be considered excess.

**4.** The Insured is permitted to have other insurance for all, or any part, of any deductible in this Policy. The existence of such other insurance will not prejudice recovery under this Policy. If the limits of liability of such other insurance are greater than this Policy's applicable deductible, this Policy's insurance will apply only after such other insurance has been exhausted.

**5.** If this Policy is deemed to contribute with other insurance, the limit of liability applicable at each **location**, for the purposes of such contribution with other insurers, will be the latest amount described in this Policy or the latest **location** value on file with this Company.

## I. REQUIREMENTS IN CASE OF LOSS

The Insured will:

**1.** Give immediate written notice to this Company of any loss.

**2.** Protect the property from further loss or damage.


***© 2017 AFM. All rights reserved.***

3. Promptly separate the damaged and undamaged property; put it in the best possible order; and furnish a complete inventory of the lost, destroyed, damaged and undamaged property showing in detail the quantities, costs, **actual cash value**, replacement value and amount of loss claimed.

4. Give a signed and sworn proof of loss to the Company within 90 days after the loss, unless that time is extended in writing by this Company. The proof of loss must state the knowledge and belief of the Insured as to:

   **a)** The time and origin of the loss.

   **b)** The Insured's interest and that of all others in the property.

   **c)** The **actual cash value** and replacement value of each item and the amount of loss to each item; all encumbrances; and all other contracts of insurance, whether valid or not, covering any of the property.

   **d)** Any changes in the title, use, occupation, location, possession or exposures of the property since the effective date of this Policy.

   **e)** By whom and for what purpose any **location** insured by this Policy was occupied on the date of loss, and whether or not it then stood on leased ground.

5. Include a copy of all the descriptions and schedules in all policies and, if required, provide verified plans and specifications of any buildings, fixtures, machinery or equipment destroyed or damaged.

6. Further, the Insured, will as often as may be reasonably required:

   **a)** Exhibit to any person designated by the Company all that remains of any property;

   **b)** Submit to examination under oath by any person designated by the Company and sign the written records of examinations; and

   **c)** Produce for examination at the request of the Company:

      **i)** All books of accounts, business records, bills, invoices and other vouchers; or

      **ii)** Certified copies if originals are lost,

   At such reasonable times and places that may be designated by the Company or its representative and permit extracts and machine copies to be made.

## J. SETTLEMENT OF CLAIMS

The amount of loss for which this Company may be liable will be paid within 30 days after:

1. Proof of loss as described in this Policy is received by this Company; and

2. When a resolution of the amount of loss is made either by:

   **a)** Written agreement between the Insured and this Company; or

   **b)** The filing with this Company of an award as provided in the Appraisal clause of this section.

In the event of insured physical loss or damage determined by this Company's representatives to be in excess of the applicable policy deductible, this Company will advance mutually agreed-upon partial payment(s), subject to the Policy's


***© 2017 AFM. All rights reserved.***

provisions. To obtain such partial payments, the Insured will submit a signed and sworn proof of loss as described in this Policy, with adequate supporting documentation.

## K. SUBROGATION

The Insured shall cooperate in any subrogation proceedings. This Company may require from the Insured an assignment or other transfer of all rights of recovery against any party for loss to the extent of this Company's payment.

This Company will not acquire any rights of recovery that the Insured has expressly waived prior to a loss. No such waiver will affect the Insured's rights under this Policy.

Any recovery from subrogation proceedings, less costs incurred by this Company in such proceedings, will be payable to the Insured in the proportion that the amount of:

**1.** Any applicable deductible; and/or

**2.** Any provable uninsured loss,

Bears to the entire provable loss amount.

## L. VALUATION

Adjustment of the physical loss amount(s) under this Policy will be as of the date of loss at the place of loss, and for no more than the interest of the Insured.

**1.** Adjustment of physical loss to property will be determined based on the lesser of the following unless stated otherwise below or elsewhere in this Policy:

- **a)** The cost to repair.
- **b)** The cost to rebuild or replace on the same site with new materials of like size, kind and quality.
- **c)** The cost to rebuild, repair or replace on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.
- **d)** On real property or machinery and equipment, other than stock, offered for sale on the date of the loss, the selling price.

**2.** On **raw materials**, supplies and merchandise not manufactured by the Insured, the replacement cost.

**3.** On **stock in process**, the value of **raw materials** and labor expended plus the proper proportion of overhead charges.

**4.** On finished goods manufactured by the Insured, the regular cash selling price, less all discounts and charges to which such finished goods would have been subject had no loss happened.

**5.** On exposed films, records, manuscripts and drawings that are not **valuable papers and records**, the value blank plus the cost of copying information from backup or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

**6.** On property that is damaged by fire and such fire is the result of **terrorism**, the **actual cash value** of the fire damage loss. Any remaining fire damage loss shall be adjusted according to the terms and conditions of the Valuation clause(s) of the Policy and shall be subject to the limit(s) of liability for Terrorism, and if stated the limit of liability for SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT(S), as shown in the Limits of Liability clause in the Declarations section.


***© 2017 AFM. All rights reserved.***

7. On personal property that is part of a pair or set, and the physically damaged personal property cannot be replaced or repaired, the reduction in value of the undamaged portion of insured personal property. If settlement is based on a constructive total loss, the Insured will surrender the undamaged parts of such property to this Company.

8. On unrepairable electrical or mechanical equipment, including computer equipment, the cost to replace such equipment with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

9. On property scheduled for demolition, the increased cost of demolition, if any, directly resulting from insured loss.

10. On improvements and betterments, the unamortized value of improvements and betterments, if such property is not repaired or replaced at the Insured's expense.

11. On property that is useless to the Insured, the **actual cash value.**

12. On property if not repaired, replaced or rebuilt on the same or another site within two years from the date of loss, unless such time is extended by the Company, the **actual cash value**.

    The Insured may elect not to repair or replace the insured real or personal property under Item 1 above that is lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to the Insured's operations within two years from the date of loss. As a condition of collecting under this item, such expenditure must be unplanned as of the date of loss and be made at a **described location** under this Policy. This item does not extend to Demolition and Increased Cost of Construction.


***© 2017 AFM. All rights reserved.***

# GENERAL CONDITIONS

## A. APPLICATION OF POLICY TO DATE OR TIME RECOGNITION

With respect to situations caused by any **date or time recognition** problem by **electronic data processing equipment or media** (such as the so-called Year 2000 problem), this Policy applies as follows:

**1.** This Policy does not pay for remediation, change, correction, repair or assessment of any **date or time recognition** problem, including the Year 2000 problem, in any **electronic data processing equipment or media**, whether preventative or remedial, and whether before or after a loss, including temporary protection and preservation of property. This Policy does not pay for any business interruption loss resulting from the foregoing remediation, change, correction, repair or assessment.

**2.** Failure of **electronic data processing equipment or media** to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times, including the Year 2000, is not insured physical loss or damage. This Policy does not pay for any such incident or for any business interruption loss resulting from any such incident.

Subject to all of its terms and conditions, this Policy does pay for physical loss or damage not excluded by this Policy that results from a failure of **electronic data processing equipment or media** to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times, including the Year 2000. Such covered resulting physical loss or damage does not include any loss, cost or expense described in a) or b) above. If such covered resulting physical loss or damage happens, and if this Policy provides business interruption coverage, then, subject to all of its terms and conditions, this Policy also covers any insured business interruption loss directly resulting therefrom.

## B. CANCELLATION/NON-RENEWAL

This Policy may be:

**1.** Cancelled at any time at the request of the First Named Insured by surrendering this Policy to this Company or by giving written notice to this Company stating when such cancellation will take effect; or

**2.** Cancelled by this Company by giving the First Named Insured not less than:

   **a)** 60 days written notice of cancellation; or

   **b)** 10 days written notice of cancellation if the First Named Insured fails to remit, when due, payment of premium for this Policy; or

**3.** Non-renewed by this Company by giving the First Named Insured not less than 60 days written notice of non-renewal.

Return of any unearned premium will be calculated on the customary short rate basis if the First Named Insured cancels and on a pro-rata basis if the Company cancels this Policy. Return of any unearned premium will be made by the Company as soon as practicable.

## C. CONFORMITY TO STATUTE

Terms of this Policy that conflict with the statutes of the jurisdiction where the insured property is located, are amended to conform to such statutes.

## D. FIRST NAMED INSURED

The First Named Insured shown in the Declarations section:


***© 2017 AFM. All rights reserved.***

**1.** Is responsible for the payment of all premiums.

**2.** Will be the payee for any return premiums.

**3.** May authorize changes in the terms and conditions of this Policy with the consent of this Company.

## E. INCREASE IN HAZARD

This Policy will not apply to any **location** where there is an increase in hazard over which the Insured has control and knowledge. Any increase in hazard at one or more **locations** will not affect coverage at other **locations** where, at the time of loss or damage, the increase in hazard does not exist.

## F. INSPECTIONS

This Company, at all reasonable times, will be permitted, but will not have the duty, to inspect insured property. This Company does not address life, safety or health issues.

This Company's:

**1.** Right to make inspections; or

**2.** Making of inspections; or

**3.** Providing recommendations or other information in connection with any inspections,

Will not constitute an undertaking, on behalf of or for the benefit of the Insured or others.

This Company will have no liability to the Insured or any other person because of any inspection or failure to inspect.

When this Company is not providing jurisdictional inspections, the Owner/Operator has the responsibility to assure that jurisdictional inspections are performed as required, and to assure that required jurisdictional Operating Certificates are current for their pressure equipment.

## G. LIBERALIZATION CLAUSE

If during the period that insurance is in force under this Policy, any filed rules or regulations affecting the same are revised by statute so as to broaden the insurance without additional premium charge, such extended or broadened insurance will inure to the benefit of the Insured within such jurisdiction, effective the date of the change specified in such statute.

## H. MISREPRESENTATION AND FRAUD

This entire Policy will be void if, whether before or after a loss, an Insured has:

**1.** Willfully concealed or misrepresented any material fact or circumstance concerning this insurance, the subject thereof, any insurance claim, or the interest of an Insured.

**2.** Made any attempt to defraud this Company.

**3.** Made any false swearing.


*© 2017 AFM. All rights reserved.*

## I. MORTGAGEE/LENDERS LOSS PAYABLE

Loss or damage, if any, to specified property insured under this Policy shall be payable to each specified Lenders Loss Payable (hereinafter referred to as Lender) and specified Mortgagee as its interest may appear.

This insurance as to the interest of the Lender or Mortgagee shall not be invalidated by:

**1.** Any act or neglect of the debtor, mortgagor or owner (as the case may be) of the property.

**2.** Foreclosure, notice of sale or similar proceedings with respect to the property.

**3.** Change in the title or ownership of the property.

**4.** Change to a more hazardous occupancy.

The Lender or Mortgagee will notify this Company of any known change in ownership, occupancy or hazard and, within 10 days of written request by this Company, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

If the Insured fails to render proof of loss within the time provided in this Policy, the Lender or Mortgagee shall render proof of loss within sixty days after having knowledge of the Insured's failure in the form and manner provided by this Policy, and, further, shall be subject to the provisions of this Policy relating to Appraisal, Legal Action Against this Company, and Settlement of Claims.

If this Policy is cancelled at the request of the First Named Insured or its agent, the coverage for the interest of the Lender or Mortgagee will terminate 10 days after the Company sends to the Lender or Mortgagee written notice of cancellation, unless:

**1.** Sooner terminated by authorization, consent, approval, acceptance or ratification of the Insured's action by the Lender or Mortgagee, or its agent.

**2.** This Policy is replaced by the Insured, with a policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement policy, notwithstanding any other provision of this Policy.

This Company may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee written notice 60 days prior to the effective date of cancellation, if cancellation is for any reason other than non-payment. If the debtor, mortgagor or owner has failed to pay any premium due under this Policy, this Company may cancel this Policy for such non-payment, but will give the Lender or Mortgagee written notice 10 days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

Whenever this Company shall pay the Lender or Mortgagee for loss or damage under this Policy and shall deny payment to the debtor, mortgagor or owner, this Company shall, to the extent of such payment, be subrogated to the rights of the Lender or Mortgagee under all collateral held to secure the debt or mortgage. No subrogation shall impair the right of the Lender or Mortgagee to recover the full amount due. At its option, this Company may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to this Company, and the remaining debt or mortgage will be paid to this Company.

This Company may invoke this Policy's Suspension clause. The suspension of insurance will apply to the interest of the Lender or Mortgagee in any machine, vessel, or part of any machine or vessel subject to the suspension. This Company will provide the Lender or Mortgagee at the last reported address a copy of the suspension notice.

All notices sent to the Lender shall be sent to its last reported address.


***© 2017 AFM. All rights reserved.***

Other provision relating to the interests and obligations of the Lender or Mortgagee may be added to this Policy by agreement in writing.

## J. POLICY MODIFICATION

This Policy contains all of the agreements between the Insured and the Company concerning this insurance. The Insured and the Company may request changes to this Policy. This Policy can be changed only by endorsements issued by the Company and made a part of this Policy.

Notice to any agent or knowledge possessed by any agent or by any other person will not:

**1.** Create a waiver, or change any part of this Policy; or

**2.** Prevent the Company from asserting any rights under the provisions of this Policy.

## K. REINSTATEMENT OF LIMITS AFTER A LOSS

Except for an **annual aggregate** limit of liability, any loss or payment of any claim will not reduce the amount payable under this Policy.

## L. SUSPENSION

Upon discovery of a dangerous condition, this Company may immediately suspend the **boiler and machinery** insurance with respect to any machine, vessel or part thereof by giving written notice to the Insured. The insurance that is suspended may be reinstated by this Company. The Insured will be allowed the return of the unearned portion of the premium resulting from the suspension of insurance.

## M. TRANSFER OF RIGHTS AND DUTIES UNDER THIS POLICY

The Insured's rights, interests and duties under this Policy may not be transferred or assigned without this Company's written consent.


***© 2017 AFM. All rights reserved.***

# DEFINITIONS

**actual cash value** means the cost to repair or replace the property, on the date of the loss or damage, with material of like kind and quality, less proper deduction for obsolescence and physical depreciation.

**annual aggregate** means the Company's maximum amount payable during any policy year.

**boiler and machinery** means:

**1.** Direct physical loss or damage originating within:

**a)** Boilers, fired or unfired pressure vessels, vacuum vessels and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

**i)** Waste disposal piping;

**ii)** Any piping forming part of a fire protective system;

**iii)** Furnaces; and

**iv)** Any water piping other than:

**(a)** Boiler feed water piping between the feed pump or injector and the boiler;

**(b)** Boiler condensate return piping; or

**(c)** Water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes.

**b)** All mechanical, electrical, electronic or fiber optic equipment;

**2.** And caused by, resulting from or consisting of:

**a)** Mechanical breakdown; or

**b)** Electrical or electronic breakdown; or

**c)** Extremes or changes of temperature; or

**d)** Rupture, bursting, bulging, implosion or steam explosion.

**3.** **boiler and machinery** as used in this Policy does not mean:

Physical loss or damage caused by or resulting from any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

**a)** Combustion explosions, except from within combustion gas turbines; or

**b)** Explosions from liquids coming in contact with molten materials; or

**c)** Accidental discharge, escape, leakage, backup or overflow to the open of any material from confinement within piping, plumbing systems or tanks except from property described in Item 1a above; or

**d)** Fire, or from the use of water or other means to extinguish a fire.


***© 2017 AFM. All rights reserved.***

AFM®
Member of the FM Global Group

proVision®

**communicable disease** means disease which is:

1. Transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges, or

2. Legionellosis.

**contaminant** means anything that causes **contamination.**

**contamination** means any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

**date or time recognition** means the recognition, interpretation, calculation, comparison, differentiation, sequencing, accessing or processing of data involving one or more dates or times, including the Year 2000.

**described location(s)** means the locations described in the Insurance Provided clause of the Declarations section of this Policy.

**earth movement** means any natural or man-made earth movement, including but not limited to earthquake or landslide regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical loss or damage by fire, explosion, sprinkler leakage or **flood** resulting from **earth movement** will not be considered to be loss by **earth movement** within the terms and conditions of this Policy.

**electronic data processing equipment or media** means any computer, computer system or component, hardware, network, microprocessor, microchip, integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether the property of the Insured or not.

**fine arts** means paintings; etchings; pictures; tapestries; rare or art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit, excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft, money and securities.

**flood** means flood; surface waters; rising waters; storm surge, sea surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not; or sewer backup resulting from any of the foregoing; regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss. Physical loss or damage from **flood** associated with a storm or weather disturbance whether or not identified by name by any meteorological authority, is considered to be **flood** within the terms of this Policy. However, physical loss or damage by fire, explosion or sprinkler leakage resulting from **flood** is not considered to be loss by **flood** within the terms and conditions of this Policy.

**Green** means products, materials, methods and processes certified by a **Green Authority** that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize environmental impact.

**Green Authority** means an authority on **Green** buildings, products, materials, methods or processes that are certified and accepted by Leadership in Energy and Environmental Design (LEED®), Green Building Initiative Green Globes®, Energy Star Rating System or any other recognized **Green** rating system.

**irreplaceable** means an item which cannot be replaced with other of like kind and quality.

**location** means a location described in the Insurance Provided clause of the Declarations section or included as Newly Acquired Property or Unnamed Property coverages.


***© 2017 AFM. All rights reserved.***

AFM®
Member of the FM Global Group

proVision®

**named perils** means: fire, lightning, **wind**, hail, explosion, smoke, impact from aircraft and vehicles, objects falling from aircraft, strike, riot, civil commotion, vandalism, theft, attempted theft, sprinkler leakage or collapse of buildings.

**occurrence** means the sum total of all loss or damage of the type insured, including any insured Business Interruption loss, arising out of or caused by one discrete event of physical loss or damage, except as respects the following:

**1.** **terrorism: occurrence** will mean the sum total of all loss or damage of the type insured, including any insured Business Interruption loss, arising out of or caused by all acts of **terrorism** during a continuous period of seventy-two (72) hours.

**2.** **earth movement: occurrence** will mean the sum total of all loss or damage of the type insured, including any insured Business Interruption loss, arising out of or caused by all **earth movement(s)** during a continuous period of seventy-two (72) hours.

**off-premises data processing or data transmission services** means the storage or processing of data performed off-premises of the Insured's property, including the transmission of voice, data or video over a single, or combination of, computer or communication networks.

**offshore** means away from the shore but not connected to the shore by docks, piers or any other physical connection other than pipelines.

**ordinary payroll** means:

**1.** Wages of all employees except officers, executives, department managers, and employees under contract or similar key employees; and

**2.** Includes taxes and charges dependent on the payment of those wages.

**physical loss or damage to electronic data, programs or software** means the destruction, distortion or corruption of electronic data, programs or software.

**production machinery and equipment** means any production or process machine(s) or apparatus that processes, forms, cuts, shapes, grinds or conveys **raw materials**, materials in process or finished goods and any associated equipment utilized in production including but not limited to electrical cabling, transformers, HVAC and any equipment or apparatus that is mounted upon or used exclusively with any one or more production or process machine(s) or apparatus.

**raw materials** mean materials and supplies in the state in which the Insured receives them for conversion by the Insured into finished goods.

**soft costs** means the expenses over and above normal expenses at **locations** undergoing alterations or additions to existing property and property in the course of construction limited to the following:

**1.** Construction loan fees - the additional cost incurred to rearrange loans necessary for the completion of construction, repairs or reconstruction including the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, and charges by the lenders for the extension or renewal of loans necessary.

**2.** Commitment fees, leasing and marketing expenses - the cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of releasing and marketing of the Insured Project due to loss of tenant(s) or purchaser(s).

**3.** Additional fees - for architects, engineers, consultants, attorneys and accountants needed for the completion of construction, repairs or reconstruction.

**4.** Carrying costs - building permits, additional interest on loans, insurance premiums and property and realty taxes.


***© 2017 AFM. All rights reserved.***

**stock in process** means **raw materials** or stock, which has undergone any aging, seasoning, mechanical or other process or manufacture, but which is not finished goods.

**terrorism** means:

**1.** Any act, involving the use or threat of: force, violence, dangerous conduct, interference with the operations of any business, government or other organization or institution, or any similar act,

**2.** When the effect or apparent purpose is:

To influence or instill fear in any government (de jure or de facto) or the public, or any segment of either; or to further, or to express support for, or opposition to, any political, religious, social, ideological or similar type of objective or position.

**transmission and distribution systems** means transmission and distribution systems including but not limited to electricity, gas, fuel, steam, water, refrigeration, sewerage, voice, data and video. Such systems shall include poles, towers and fixtures, overhead conductors and devices, underground and underwater conduit, underground and underwater conductors and devices, line transformers, service meters, street lighting and signal systems.

**valuable papers and records** means inscribed, printed or written: documents; manuscripts or records including abstracts; and, books, deeds, drawings, films, maps or mortgages, all of which must be of value to the Insured. **Valuable papers and records** are not: money, securities and stamps; converted data programs or instructions used in the Insured's data processing operations; or, materials on which data is recorded.

**wind** means direct action of wind including substance driven by wind. **Wind** does not mean or include anything defined as **flood** in this Policy.

**workplace accident** means a sudden, fortuitous event that happens during working hours and arises out of work performed in the course and the scope of employment.


***© 2017 AFM. All rights reserved.***

AFM

Member of the FM Global Group

proVision

# Real Estate Endorsement

This Endorsement is a part of this Policy and the terms and conditions of this Policy are amended as described herein. All other terms and conditions of this Policy remain unchanged.

## 1. Contingent Real Property

This Policy covers Real Property that is the contractual responsibility of the Insured's lessee to insure for physical loss or damage of the type insured. Coverage under this Policy shall apply only after the coverage provided under the lessee's policy has been exhausted. The lessee's policy will be the first policy to respond in the event of loss or damage. Upon exhaustion of coverage under the lessee's policy, this Policy will cover:

**a)** The difference in definitions, perils, conditions or coverages between the lessee's policy and this Policy; and

**b)** The difference between the limit(s) of liability stated in the lessee's policy and this Policy;

Provided that:

**a)** The coverage is provided under this Policy;

**b)** The limit(s) of liability has been exhausted under the lessee's policy; and

**c)** The deductible(s) applicable to such claim for loss or damage under the lessee's policy has been applied. If the deductible applied in the lessee's policy is different from the deductible that would have been applied for such loss under this Policy, then this Policy will provide for such difference in deductible.

Notwithstanding the foregoing, in the event that the lessee has not placed coverage, or has allowed a policy to lapse, be non-renewed or cancelled, then this Policy shall act as primary insurance as respects the loss or damage. In the event this Policy shall become primary insurance, each claim for loss or damage under this Policy shall be subject to the applicable deductible(s) under this Policy.

This Policy will not cover any loss due to insolvency or bankruptcy of the insurance company issuing the lessee's policy.

Any coverage provided by the lessee's policy that is not provided in this Policy does not extend to this Policy.

## 2. Emergency Evacuation Expense

This Policy covers the reasonable and necessary costs incurred by the Insured for the emergency evacuation and subsequent return of tenants or lawful occupants when the Insured's management, using reasonable discretion, or a civil authority orders the emergency evacuation of a **described location** as a direct result of immediately impending physical loss or damage of the type insured by this Policy.

Emergency Evacuation Expense Exclusions: As respects Emergency Evacuation Expense, the following additional exclusions apply:

This Policy excludes:

**a)** The cost to move personal property of tenants or lawful occupants.

**b)** The cost of temporary or permanent housing or lodging.

**c)** Loss caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss.


***© 2017 AFM. All rights reserved.***

This coverage is subject to the deductible provisions that would have applied had the physical loss or damage happened.

## 3. Innkeeper's Liability

This Policy covers personal property of the type insured of hotel guests while at a **described location**, when such personal property is not in the Insured's custody.

## 4. Tenant Relocation Expense

This Policy covers the reasonable and necessary **tenant relocation expenses** incurred by the Insured to relocate and return tenants or lawful occupants to other quarters within this Policy's Territory when rented space or living quarter(s) at a **described location** are made uninhabitable as a direct result of physical loss or damage insured by this Policy.

Tenants Relocation Expense Exclusions: As respects Tenant Relocation Expense, the following additional exclusions apply:

This Policy excludes:

**a)** Loss caused by the termination of a lease or other agreement.

**b)** Security deposits, rent or other payments made to the landlord or lessors of the new quarters.

**c)** Down payments, purchase price, legal fees and closing costs for the purchase of new quarters.

**d)** The cost of permanent housing or lodging.

**e)** Loss or damage caused by or resulting from **terrorism**, regardless of any other cause or event, whether or not insured by this Policy, contributing concurrently or in any other sequence to the loss.

For purposes of this coverage, **tenant relocation expenses** means the cost to:

**a)** Pack and transport personal property of the type insured of tenants or lawful occupants.

**b)** Store such personal property while awaiting possession of other quarters or restoration of existing quarters.

**c)** Search for new quarters.

**d)** Disconnect and reconnect fixtures and equipment.

**e)** Re-establish new utility services less refunds from discontinued services.


***© 2017 AFM. All rights reserved.***

# SUPPLEMENTAL UNITED STATES CERTIFIED ACT OF TERRORISM ENDORSEMENT

**This Endorsement is applicable to all insured locations in the United States, its territories and possessions and the Commonwealth of Puerto Rico.**

**Coverage for "Certified Act of Terrorism" Under The Terrorism Risk Insurance Act of 2002, as amended.**

In consideration of a premium charged of **$10,561**, this Policy, subject to the terms and conditions therein and in this Endorsement, covers direct physical loss or damage to insured property and any resulting Business Interruption loss, as provided in the Policy, caused by or resulting from a Certified Act of Terrorism as defined herein.

Notwithstanding anything contained elsewhere in this Policy, any exclusion or limitation of terrorism in this Policy and any endorsement attached to and made a part of this Policy, is hereby amended to the effect that such exclusion or limitation does not apply to a "Certified Act of Terrorism" as defined herein.
This amendment does not apply to any limit of liability for a Certified Act of Terrorism, if any, stated under any Sub-Limits clause in the Declarations section of this Policy.

With respect to any one or more Certified Act(s) of Terrorism, this Company will not pay any amounts for which the Company is not responsible under the terms of the Terrorism Risk Insurance Act of 2002 (including subsequent action of Congress pursuant to the Act) which includes a provision stating that if the aggregate insured losses exceed $100,000,000,000 during any calendar year, neither the United States Government nor any insurer that has met its insurer deductible shall be liable for the payment of any portion of the amount of such losses that exceed $100,000,000,000. If the aggregate insured losses for all insurers exceed $100,000,000,000, your coverage may be reduced.

The coverage provided under this Endorsement for "Certified" losses caused by acts of terrorism will be partially reimbursed by the United States Government under a formula established by Federal Law. Under this formula, the United States pays 85% (and beginning on January 1, 2016, shall then decrease by 1 percentage point per calendar year until equal to 80 percent) of covered terrorism losses exceeding a statutorily established retention by the insurer referenced in this Policy. The premium charged for this coverage is provided above.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Endorsement or the Policy.

The coverage provided by this Endorsement only applies to a Certified Act of Terrorism.

Reference and Application: The following term(s) means:

Certified Act of Terrorism:

A "Certified Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002 as amended and extended in 2005, 2007 and in 2015. The criteria contained in that Act for a "Certified Act of Terrorism" include the following:

a. The act resulted in aggregate losses in excess of $5,000,000; and

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

AFM proVision

# MONTANA

# AMENDATORY ENDORSEMENT

With respect to any insured location in the state of Montana this policy is amended:

**CANCELLATION** - This policy shall be cancelled at any time at the request of the Insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time.

This policy is subject to cancellation by the company as follows:

**MID-TERM CANCELLATION**

**1.** Except as provided by subsection (3) or (4), no insurance policy may be cancelled by the insurer prior to the expiration of the agreed term or one year from the effective date of the policy or renewal, whichever is less, except for reasons specifically allowed by statute, for failure to pay a premium when due or on grounds stated in the policy which pertain to the following:

- **a.** Material misrepresentation;
- **b.** Substantial change in the risk assumed, except to the extent that the insurer should reasonably have foreseen the change or contemplated the risk in writing the contract;
- **c.** Substantial breaches of contractual duties, conditions or warranties;
- **d.** Determination by the Commissioner that continuation of the policy would place the insurer in violation of the Montana Insurance Code;
- **e.** Financial impairment of the insurer, or
- **f.** Such other reasons that are approved by the Commissioner.

**2.** Cancellation under subsection 1 shall not be effective prior to 10 days after the 1st class mailing or delivery of written notice to the policyholder.

**3.** Subsections 1 and 2 do not apply to any newly issued insurance policy if the policy has been in effect less than 60 days at the time the notice of cancellation is mailed or delivered. No cancellation under this subsection is effective until at least 10 days after the 1st class mailing or delivery of a written notice to the policyholder.

**4.** If a policy has been issued for a term longer than one year, and if the premium is prepaid or for additional premium consideration an agreed term is guaranteed, the insurer may not cancel the policy except for reasons specifically allowed by statute, for failure to pay a premium when due, or on grounds stated in the policy which pertain to those grounds listed in 1.a. through f.

**ANNIVERSARY CANCELLATION** - A policy may be issued for a term longer than one year or for an indefinite term with a clause providing for cancellation by the insurer by giving notice 45 days prior to any anniversary date.

**NONRENEWAL** - Insurance under this policy may be nonrenewed by this company. At least 45 days prior to the date of expiration provided in this policy a notice of intention not to renew this policy beyond the agreed expiration date must be mailed or delivered to the Insured by the Company with a copy to the agent.

**INFORMATION** - If a notice of cancellation or nonrenewal does not state with reasonable precision the facts upon which the Company's decision is based, the Company must mail or deliver such information within 15 working days of receiving written request from the Insured. No such notice is effective unless it contains adequate information about the Insured's right to make the request.

In MORTGAGEE/LENDERS LOSS PAYABLE, the following sentence:

At its option, this Company may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to this Company, and the remaining debt or mortgage will be paid to this Company.

Is replaced with:

In the event the Insured is insolvent, this Company may, at its option, pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to this Company, and the remaining debt or mortgage will be paid to this Company.

**CONFORMITY WITH MONTANA STATUTES** – The following condition is added: The provisions of this policy conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which the insured resides on or after the effective date of this policy.

AFM proVision®

# NEVADA

# AMENDATORY ENDORSEMENT

With respect to any insured location in the State of Nevada this policy is amended:

**CANCELLATION -** If this policy has been in effect for at least 70 days or is a renewal of a policy issued by this Company, it may cancel this policy only on any anniversary date or if one or more of the following reasons apply:

**1.** Failure to pay a premium when due;

**2.** Conviction of the insured of a crime arising out of acts increasing the hazard insured against;

**3.** Discovery of fraud or material misrepresentation in the obtaining of this policy or in the presentation of a claim thereunder;

**4.** Discovery of:

   a. An act or omission; or

   b. A violation of any condition of the policy, which occurred after the first effective date of the current policy and substantially and materially increases the hazard insured against;

**5.** A material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

**6.** A determination by the Commissioner that continuation of the Insurer's present volume of premiums would jeopardize the insurer's solvency or be hazardous to the interests of policyholders of the insurer, its creditors or the public; or

**7.** A determination by the Commissioner that the continuation of this policy would violate or place the Company in violation of any provision of the code.

This Company will deliver or mail the written notice of cancellation at least 10 days before the cancellation is to take effect when the reason for cancellation is nonpayment of premium. It will deliver or mail to the Named Insured written notice of cancellation at least 30 days before the cancellation is to take effect, except when the reason for cancellation is nonpayment of premium. This Company may cancel the policy on any anniversary date by delivering or mailing written notice of cancellation at least 60 days before the policy anniversary date.

The notice must be accompanied by the written explanation of the specific reasons for the cancellation. Return of any unearned premium will be calculated: on a pro-rata basis if the Policy is cancelled. Return of unearned premium will be made by this Company as soon as practicable.

**NONRENEWAL -** If this Company decides not to renew this policy, it will deliver or mail to the Named Insured written notice of nonrenewal at least 60 days before the policy expiration date. The notice must be accompanied by a written explanation of the specific reasons for nonrenewal. Notice of nonrenewal is not required if the Insured has accepted replacement coverage of has requested or agreed to nonrenewal.

**APPRAISAL** – The appraisal agreement as found in the Appraisal clause in this policy is voluntary between the insured and this Company.